# WALTER KNIPP

*vs.*

# CHARLES T. BAGBY.

*Trustees*: *personal liability of—; covenants in mortgages.*

Where a trustee executes a mortgage, in the usual form, and with the usual covenants, with nothing on the face of the mortgage or mortgage notes to relieve the trustee from personal liability, or to show that the parties intended that the trustee should not be personally liable on the covenant to pay the mortgage debt, the mere fact of the addition of the words "trustee" after his signature to the mortgage, does not free him from personal liability.                                    p. 463

The mere use by a promissor of the name of *trustee,* or any other name of office or employment, will not discharge him.

p. 464

But where a trustee acts in good faith, for the benefit of the trust, he is entitled to indemnify himself for his engagements out of the estate in his hands.                              p. 464

*Decided June 23rd, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John C. Tolson* (with whom was *Albert C. Tolson* on the brief), for the appellant.

*George P. Bagby,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

On the 14th of August, 1908, the appellant as trustee executed a mortgage to the appellee for the sum of $5,000, on property situated in Baltimore City, and passed to him his promissory note, payable in five years, for the principal sum and also ten other promissory notes for the sum of one hundred and fifty dollars each, for the interest to accrue thereon.

The mortgage is signed, Walter Knipp (Seal), Trustee, executed in legal form, and recorded among the land records of Baltimore City.

Upon a default and foreclosure of this mortgage, a deficiency and balance of $1,422.56 was found to be due the mortgagee, and on his motion a personal decree, under Chapter 327, of the Acts of 1898, was passed by Circuit Court No. 2, of Baltimore City, against the appellant, for this deficiency. It is from this decree that this appeal has been taken.

The covenant to pay the mortgage debt contained in the mortgage, and upon which the recovery here is sought, is in the form, usual in deeds of mortgage, and the performance of the covenant was one of the conditions upon which the mortgage was executed. It is as follows: "And it is agreed, that until default be made in the premises, the said party of the first part, his successors or assigns, shall possess the aforesaid property upon paying in the meantime all taxes, water rent and assessments, public dues and charges levied or assessed, or to be levied or assessed, on said hereby mortgaged property, which taxes, water rent, mortgage debt and interest, public

dues, charges and assessments the said party of the first part covenants to pay when legally payable and demanded."

It is conceded, that the deed of trust under which the trustee held title to the property authorized and gave the trustee power to mortgage "all or any portion of the property," but it is earnestly insisted upon the part of the appellant, that the trustee is not personally liable under the covenant for the mortgage debt remaining unpaid, because he had no personal nor beneficial interest in the property, received no profit or any part of the loan, and that there never was at any time any intention that the trustee should be bound personally by the covenants in the mortgage.

On the other hand, it is contended by the appellee, that the trustee is personally liable on the covenant in the mortgage, and that the money was loaned, in reliance on all the covenants of the mortgage, as being valid and binding covenants.

The propositions of law involved in the controversy, has been settled and the rule applied in somewhat similar cases, in this and other jurisdictions.

The Supreme Court of the United States, as far back as *Duvall* v. *Craig,* 2 Wheat. 45, held, that if a trustee chooses to bind himself by a personal covenant, he is liable at law for a breach of it, although he describes himself as covenanting as trustee. JUDGE STORY in delivering the opinion of the Court, said: "If he chooses to bind himself by a personal covenant, he is liable at law for a breach thereof in the same manner as any other person, although he describes himself as covenanting as trustee, for in such case the covenant binds him personally, and the addition of the words 'as trustee' is but matter of description to show the character in which he acts for his own protection, and in no degree affects the rights or remedies of the other party."

In *Taylor* v. *Mayo, Admr.,* 110 U. S. 330, the Supreme Court adopts the reasons, upon which *Duvall* v. *Craig* is based and cites a number of other cases upon the subject and among other things, said, "When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The

trust estate can not promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him. Of course, when a trustee acts in good faith for the benefit of the trust, he is entitled to indemnify himself for his engagements out of the estate in his hands, and for that purpose a credit for his expenditures will be allowed in his accounts by the Court having jurisdiction thereof. If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate." * * * "The designation of the plaintiffs in error as trustees in the contract and in the pleadings was merely descriptive of their persons. The contract was their personal undertaking."

The general rule is stated thus in 11 *Cyc.* 1055. While a clearly manifested intention to the contrary will always control, there is a strong presumption that a grantor intends to bind himself even though he covenants only for his heirs, executors, or assigns. So, too, persons acting in a fiduciary capacity are held personally bound by their covenants, even though expressly made in such capacity, on the ground that where a party contracts in the right of another, having no authority to bind his principal, he is to be held personally liable, as otherwise the coventee would have no remedy for the breach of the contract." See also 8 *A. & E. Enc. of Law,* p. 160, and cases there cited.

The principle announced by the authorities above cited, has been recognized and sanctioned by the decisions of this Court.

In *Gill* v. *Carmine,* 55 Md. 339, JUDGE ALVEY in delivering the opinion of the Court, said: "The law is perfectly well settled, that the party holding the estate in trust, even with

general powers of management, is bound personally by the contracts that he may make as trustee, though he designates himself as such; 'and nothing will discharge him but an express provision, showing clearly that both parties agreed to act upon the responsibility of the funds alone, or of some other responsibility exclusive of that of the trustee; or some other circumstance clearly indicating another party who is bound by the contract, and upon whose credit alone it was made.' " But in the absence of such express agreement or circumstances plainly indicating an intention on the part of the party doing the work or making the expenditure, to exclude the personal liability of the trustee and to rely exclusively upon the estate or some other source, for payment, the trustee at whose request the work was done or expenditure made, will be held personally liable. In such case, he must seek reimbursement from the trust estate. 1st *Parsons Contract*, 102; *Cullen* v. *Queensberry*, 1 Bro. Ch. 101; *Eaton* v. *Bell*, 5 Barn. & Ald. 34; *New* v. *Nicoll*, 73 N. Y. 127.

In *Vanderford* v. *Farmers Bank*, 105 Md. 164, Judge ·Burke, in dealing with the facts of that case, said: "The principle announced in the cases is that if the contract set up is different from that which attached by presumption of law, it must be established by proof that it was the understanding of all the parties to the instrument, and that it necessarily follows that if a different contract from that which arises from the terms of the instrument is relied on by special pleas in bar, it must be alleged and proven that such was the understanding of all the parties."

In the recent case of *Belmont Dairy Co.* v. *Thrasher*, 124 Md. 328, Judge Boyd after reviewing a number of cases upon the personal liability of a maker of a promissory note under the facts of that case, said: "The Negotiable Instrument Act provides in section 39 of Article 13 of the Code that, where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of

words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability." The law announced in the above cases has therefore been somewhat changed, but it does not affect a case such as this, unless it be that the inference is that when a note is made as this is and the individual signing does not in any way indicate that he signed only for the purpose of authenticating the company's signature, it was the intention to bind him personally."

In the present case there is nothing upon the face of the mortgage or notes to relieve the trustee from personal liability, or to show that both parties intended that the trustee should not be personally liable on the covenant to pay the mortgage debt, or circumstances plainly indicating an intention on the part of the mortgagee to rely exclusively upon the mortgaged property alone as security.

On the contrary, an examination of the mortgage itself, the dealings between the parties and the testimony of the appellee shows the reverse intention.

The covenant to pay the mortgage debt contained in the mortgage, was expressly renewed and inserted in an extension agreement between the parties made five years after the execution of the mortgage. It is as follows:

"*Now This Agreement Witnesseth,* That in consideration of the premises and in consideration and on condition of the prompt payment on February the 14th, 1914, of Five Hundred Dollars ($500) on account of said principal mortgage indebtedness, and of the prompt payment of each of the said interest notes as and when they are due and payable, and in consideration and on condition of the prompt payment of the insurance premium, taxes and water rent on the above-mentioned property as and when each of them, and each installment of them, is respectively due and payable, and further in consideration and on condition of the performance of each and all of the covenants and conditions covenanted in said mortgage to be performed by the said party of the second part,

the time for the payment of the said principal sum
is hereby extended as above set forth; that is to say,
Five Hundred Dollars ($500) of said principal sum
for a period of six months from August the 14th, 1913,
and Forty-five Hundred dollars ($4,500) of said prin-
cipal sum for a period of three years from August the
14th, 1913."

It was also provided in this agreement, which was signe 1
by Charles T. Bagby (Seal) and by Walter Knipp (Seal),
trustee, that the agreement is made upon the express condi-
tion that should there be a default in the payment on Febru-
ary 14th, 1914, of five hundred dollars ($500) on account of
the principal mortgage indebtedness, or should there at any
time thereafter be a default in the payment of the interest
notes hereinbefore referred to, or of the balance due on said
principal note, or in the payment of the said insurance pre-
mium, taxes or water rent, or any installment of them, as and
when each is respectively due and payable or, should there be
a default in any of the covenants or conditions in the mort-
gage, then and thereupon the whole mortgage debt shall be
deemed and become due and payable and the party of the
first part shall immediately be relegated to all of his rights
and powers under said mortgage, particularly with reference
to a foreclosure of same, which rights and powers, together
with each and every covenant and condition of said mortgage,
and particularly the assent to a decree therein contained, are
hereby expressly given and confirmed by the said party of the
second part as fully as if they were set forth herein.

The testimony of Mr. Bagby, the mortgagee, is to the effect,
that there was no express agreement, or understanding to
exclude the personal liability of the trustee, under the cove-
nant in the mortgage and it was not his intention to release
him from it. He testified, in part, as follows: "Q. Did you
prepare the mortgage, Mr. Bagby? A. No, I did not prepare
the mortgage or the mortgage notes. I do not do any title
work whatever. Q. Go ahead? A. Now, I had no other or

different agreement with Mr. Knipp than the agreement set forth in the mortgage and in the mortgage notes except that after the mortgage was due there was an extension agreement entered into. I can say further that I did not release or intend to release Mr. Knipp or anybody else from the liability assumed in the mortgage and the mortgage notes. Q. Now, Mr. Bagby, with whom did you deal in this transaction? A. I dealt exclusively with Mr. Walter Knipp. Q. Now, when did you first know who the parties interested with Mr. Knipp in the property were? A. Mr. Knipp told me, I think, before the loan was made that other parties were interested with him in this property, but I did not go into that matter until there was a default, and then the question arose and I did not go into it. That was five years later when the mortgage fell due and was in default. Then we entered into an extension agreement."

The testimony of Mr. Knipp, the trustee, was to the effect, that he took the deed, conveying the property to himself, as trustee, to Mr. Bagby's office, before the execution of the mortgage, but that he always dealt with him relative to the mortgage indebtedness and he did not know that Mr. Bagby ever met the parties interested with him in the transaction.

The dealings between the parties by letter and otherwise show that the mortgagee never intended to rely solely upon the mortgaged property as the only security for the debt, or that the *cestui que trust,* and not the trustee personally, should be bound. *Dougherty* v. *McColgan,* 6 G. & J. 275; *DeBebian* v. *Gola,* 64 Md. 262; *Carroll* v. *Bowen,* 113 Md. 155.

The facts of the case of *Glenn* v. *Allison,* 58 Md. 527, relied upon by the appellant, are unlike those of this case, and we do not consider it, as either in conflict with or as overruling the well-settled law, announced by the previous cases in this Court and the Federal Courts, and which have been followed since.

JUDGE ROBINSON, in the opinion in *Glenn's Case (supra)*, said, it is clear that Glenn neither meant to make himself personally liable, nor was it so understood by the mortgagee, and construing the (Glenn) mortgage according to the obvious meaning of the parties, Glenn was not personally liable on the covenant. And in saying this, he said, "We do not mean to question the general principle which holds one liable on a covenant made by him as trustee." It was further said, if the question depended solely upon the covenant itself, there could be no question as to Glenn's personal liability, because a trustee not having the power ordinarily to bind the trust estate by covenant it is but fair to presume that the credit was given upon his individual responsibility.

We find nothing in the facts or circumstances of the case at bar, which would discharge the trustee from his personal covenant in this mortgage, and without prolonging this opinion, for the reasons stated, the decree of the Court below will be affirmed.

*Decree affirmed, with costs.*