**William Alfred GIDDENS, Appellant,**

v.

**ISBRANDTSEN CO., Inc., Appellee.**

**No. 9980.**

United States Court of Appeals.
Fourth Circuit.

Argued Nov. 3, 1965.

Decided Jan. 3, 1966.

**126**

Ralph Rabinowitz, Norfolk, Va. (Sidney H. Kelsey, Norfolk, Va., on brief), for appellant.

John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Circuit Judge, and MICHIE, District Judge.

ALBERT V. BRYAN, Circuit Judge:

Laches as a bar to recovery of damages for a personal injury resulting from a maritime tort occurring on Virginia waters should be determined largely by reference to the Virginia 2-year statute of limitations, the District Court has held. It dismissed, as stale, the action at law brought by William Alfred Giddens against Isbrandtsen Co., Inc. for injuries

he suffered, not quite 3 years before, while working as a longshoreman aboard the company's SS Flying Clipper in Hampton Roads. As we think the State law should not be given such significance, we reverse.

The alleged injury was sustained on May 28, 1958 but the action was not filed until May 25, 1961. The shipowner's first defense was laches, depending chiefly upon the Virginia limitation on personal injury suits. Va.Code, 1950, § 8–24. As the more pertinent analogy, the claimant urged the 3-year indulgence of the Jones Act, 46 U.S.C. 688, 45 U.S.C. 56. See Cox v. Roth, 348 U.S. 207, 210, 75 S.Ct. 242, 99 L.Ed. 260 (1955). The District Judge held that since the suit was filed more than two years after the accident, there was a presumption that the delay was inexcusable and the shipowner prejudiced. He thought the presumption had not been rebutted.

Giddens' claim was this. The Flying Clipper was loading tobacco by means of cargo runners controlled by the ship's winches. As two hogsheads were lowered into his hatch and he put his hand on the top of the "hogs" to "catch it and start to work on it", the control winch suddenly "jumped up" the load before it was "unhooked". The movement caught Giddens' hand between the load and the hatch coaming. Laying the fault to the defectiveness of the winch, he based his action for damages on the shipowner's negligence and the Flying Clipper's unseaworthiness.

██ In the enforcement of a maritime claim admiralty prefers the equity rule of laches as opposed to any rigid limitation. The Key City, 14 Wallace (81 U.S.) 653, 660, 20 L.Ed. 896 (1871). This is the law of the sea, governing irrespective of the form or forum of the suit. Larios v. Victory Carriers, Inc., 316 F.2d 63, 65 (2 Cir.1963); see Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 531, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Hence, because this action is at law, on diversity jurisdiction,

laches is not displaced by any limitation statute.

██ Laches is sustainable only on proof of both of two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense". Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). The latter contemplates the dispersal and inaccessibility of witnesses, the dimming of recollections and other disadvantages incident to the lapse of time. Thus the presence of laches is ascertained by a balancing of the claimant's delay with the proferred excuse, if any, against the defendant's consequent detriment. The determination demands a weighing of equities. These in turn depend upon an assay of the circumstances.

Though laches is not identifiable with any particular statute, State or Federal, it may be analogized with a statute's period of limitation. Yet it may be greater in time or even less. 3 Benedict, Admiralty, 6th ed., § 463 at 294. The limitation laws, to the extent they are relevant, weigh on the side of prejudice and against dilatoriness with the excuse, if any, as a counterbalance.

██ The Virginia statute, we think, is not so closely related to the question as to be a significant factor. Giddens does not sue on a cause of action afforded by Virginia common law or statute. His suit is pitched exclusively on maritime law, as granting him recourse against the shipowner. While a longshoreman is not a crewman in all considerations, he is afforded comparable protection when performing the traditional duties of the crewman. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 90, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). We do not mean to say that "state statutes of limitations are immaterial in determining whether laches is a bar", Czaplicki v. The Hoegh Silvercloud, supra, 351 U.S. 525, 533, 76 S.Ct. 946, 951 (1956); we simply say that Virginia's law should not have the decisive influence accorded it by the District Court.

On the other hand, the limitation in the Jones Act—3 years—is a more logical and acceptable polestar. It relates to personal injuries on navigable waters. Presumably it was adopted with seamen's circumstances in mind. On the other hand, the State statute comprehends many other and more varied concerns, landside rather than offshore. Also, the Jones Act is of national application, thus providing a uniform criterion wherever in the United States maritime responsibilities are to be enforced. Force is lent to this argument by recalling that the 3 years fixed in the Federal statute represents the consensus of Congress, the final authority on remedies in admiralty, as to what is a fair opportunity for suit.

The Jones Act as furnishing a parallel to help courts in deciding an issue of laches in a longshoreman's suit against a shipowner has been recognized and adopted by the Fifth Circuit. Flowers v. Savannah Machine & Foundry Co., 310 F.2d 135, 137 (5 Cir.1962). Admittedly, other courts have preferred State limitation laws as exampling standards of guidance. 3 Benedict, Admiralty, 6th ed., § 463 at 293; Oroz v. American President Lines, Ltd., 259 F.2d 636, 639 (2 Cir. 1958), cert. den., 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572; Dawson v. Fernley & Eger, 196 F.Supp. 816, 821 (E.D.Va. 1961).

██ While imperceptive adherence to any statute is to be discountenanced, Gardner v. Panama R. R., 342 U.S. 29, 30–31, 72 S.Ct. 12, 96 L.Ed. 31 (1951), we believe for the reasons just enumerated that when advertence to a statute is desirable, the Jones Act's time prescription is the more appropriate analogue. But, we repeat, State limitation periods, whether greater or less, may be considered in determining what is prejudicial delay.

The conclusions we have stated are confined to personal injury actions. We do not now intend to rule upon the effect, if any, to be given State limitations in other

spheres of maritime litigation, such as suits involving contracts, the priority of liens and other issues of admiralty concern. Cf. 3 Benedict, Admiralty, 6th ed., § 466 at 301.

Where limitation statutes have been accepted as helpful in admiralty suits, they have not only been analogized in time to laches, but frequently they have been further looked to as creating an evidential presumption in the ascertainment of laches. In the latter use, when the interval between injury and suit exceeds a corresponding statutory limitation, prejudice to the defendant is said to be presumed, and thereupon the plea is sustained unless the claimant pleads and proves facts "negativing" the presumption. Davis v. Nelson, 285 F.2d 214 (4 Cir.1960); but cf. Larios v. Victory Carriers, Inc., supra, 316 F.2d 63, 66–67. The District Court's measurement presently has included both of these uses of the Virginia statute. In stressing the second, the judge said, "Armed with the presumption of prejudice, defendant was not required to prove anything". While the breadth of this ruling may be debatable, the only difference with it we need note is, to reiterate, the Court's overemphasis of the State statute in finding laches.

■ The pattern to be followed for decision upon a plea of laches, we think, is this. The defendant has the burden of ultimately proving inexcusable or inadequately excused delay, plus prejudice, inasmuch as laches is an affirmative defense. F.R.Civ.P. 8(c). Initially this obligation is ordinarily satisfied by the defendant's noting that the action was not commenced within the statutory time-parallel of laches, or by facts otherwise revealing a lack of vigilance. The second element—prejudice—must also be demonstrated by the defendant, but in this he is aided by the inference of prejudice warranted by the plaintiff's delay. The plaintiff is then to be heard to excuse his apparent laggardness and to prove

facts manifesting an absence of actual prejudice.

However, even if the delay be beyond the preceptive statutory period, or appear inordinate on other considerations, and although it be explained only insubstantially or not at all, the defendant is not relieved of his burden of proving prejudice. But he may either rest on the inference alone or introduce additional evidence.

In the end, the court weighs the excuse, or absence of excuse, against the actual or reasonably anticipated injury. On the equities then evident, the court allows or disallows the plea.

Somewhat in the suggested pattern and by way of replication to Isbrandtsen's plea, Giddens not only urged that the Jones Act refuted the imputation of inexcusable wait, but also pleaded and proved certain facts indicating the absence of prejudice. For example, his evidence tended to prove that the ship's crew had notice of the accident immediately upon its happening; that Isbrandtsen was in possession of the names of the local witnesses; that its counsel took statements from them; and that Giddens' medical injury-history was available to the respondent in the record of his claim under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. 901 et seq. To combat these facts the shipowner presented no proof of prejudice beyond the inference arising from the procrastination.[1]

■ Pursuing the rule of burden of proof we have outlined and resolving the equities, we think respondent's plea cannot succeed. Notwithstanding that Giddens' excuse for his tardiness—ignorance of his right to sue as well as receive compensation under the Longshoremen's Act —was in law no excuse, Morales v. Moore-McCormack Lines, Inc., 208 F.2d 218, 221 (5 Cir.1953), and putting the statute aside momentarily, Giddens' dereliction alone did not establish laches. Consider-

---

1. The defense was first raised by a motion to dismiss and later by answer. However, the Court heard it fully, both on the complaint and on evidence, thus giving it a separate hearing as a special issue.

ing the extent of the time lag and Giddens' evidence on lack of prejudice, the shipowner has not borne its burden. "["A"] weak excuse may suffice if there has been no prejudice". Larios v. Victory Carriers, Inc., supra, 316 F.2d 63, 67 (2 Cir. 1963). In this connection, it must be kept in mind, too, that a concurrence of hurt and untimeliness is necessary to constitute the defense of laches. Costello v. United States, supra, 365 U.S. 265, 282 (1961).

The order dismissing the action for laches will be reversed and the case remanded to the District Court for trial.

Reversed and remanded.

Moore, Circuit Judge, dissented.