Maurice WHITE

v.

LUNDEBERG MARYLAND SEAMAN-
SHIP SCHOOL, INC., et al.

LUNDEBERG MARYLAND SEAMAN-
SHIP SCHOOL, INC., Third
Party Plaintiff,

v.

COLONNA'S SHIPYARD, INCORPO-
RATED, Third Party Defendant.

Civ. No. 71–1237.

United States District Court,
D. Maryland.

Nov. 28, 1972.

Ralph Rabinowitz, Norfolk, Va., and Stanley Silverman, Baltimore, Md., for plaintiff.

Benjamin C. Howard and L. Keith Simmer, Jr., Baltimore, Md., for defendant and third party plaintiff, Lundeberg Maryland Seamanship School, Inc. and defendant Harry Lundeberg School of Seamanship.

Frank J. Vecella, Baltimore, Md., for defendant Seafarers' International Union of North America.

Randall C. Coleman and Ober, Grimes & Shriver, Baltimore, Md., for third party defendant.

FRANK A. KAUFMAN, District Judge.

Plaintiff, a ship maintenance and shipyard employee, alleges that he was injured on November 7, 1968 in the course of performing, at the direction of his employer, the third party defendant herein, maintenance services for a vessel owned, controlled and/or managed by defendants and used for training seamen who are members of the defendant Union. The parties are in agreement that the vessel is owned by the trustees of a trust created in 1965 jointly by the Union and a group of employers. The trust instrument specifically provides that "[i]t shall be known as the HARRY LUNDEBERG SCHOOL OF SEAMANSHIP." [1] The purpose of the trust is "to provide training programs and unemployment benefits for employees covered by [the] collective bargaining agreements" [2] between the Union and the employer group who established the trust.

## I.

Defendant Harry Lundeberg School of Seamanship (School) has filed a motion seeking, as to itself as one of the defendants, a dismissal of the complaint on the ground that plaintiff should have named the trustees of the defendant trust as defendants and not the trust itself as an entity. Pursuant to the provisions of Federal Civil Rule 17(b), this Court looks to Maryland law to determine if the trust, as such, has the capacity to be sued. [3] But none of

---

1. Language quoted from page 1 of the trust instrument which is part of the record in this case.

2. *Id.*

3. *See* the first part of the third sentence of Rule 17(b), preceding the word "except". Subsection (1) of the "except" clause is inapplicable in the ab-

counsel or this Court have uncovered any controlling Maryland statute or court opinion. The general rule is that a trust as an entity does not have the capacity to be sued and that that capacity exists only in its trustees. Coverdell v. Mid-South Farm Equipment Association, 335 F.2d 9, 12–14 (6th Cir. 1964). In *Coverdell*, Judge Weinman discussed and distinguished Pavlovscak v. Lewis, 274 F.2d 523 (3d Cir. 1959), noting that in that case, the Third Circuit applied Pennsylvania law in reaching the conclusion that service, effected upon the United Mine Workers of America Welfare and Retirement Fund by service upon the employee of the trust in charge of the "trust" activities in Pennsylvania, was valid. In *Pavlovscak*, Judge Hastie stated (at 525) that "Pennsylvania procedural law treats this Fund, for purposes of suability and amenability to process, like an ordinary unincorporated association." In that connection, it is to be noted that Md.Ann.Code art. 23, § 138 provides: "Every unincorporated association or joint stock company having a recognized group name may sue or be sued in such group name in any action affecting the common property, rights and liabilities of such association or joint stock company." However, there is no Maryland authority, similar to that found by Judge Hastie to exist in Pennsylvania, teaching that School should be treated herein as an unincorporated association for purposes of suability and amenability to process. In the absence of such Maryland authority, and the availability of other grounds upon which this Court can determine the issue posed by School's motion, this Court expresses no opinion as to whether Maryland law is the same as, or different from, the Pennsylvania principles referred to by Judge Hastie.

sence of a holding by this Court that School should be treated in this case as an unincorporated association, a holding this Court does not make for reasons hereinafter set forth in the body of this opinion.

In this case, School has, for some time, conducted substantial business activities under the trade name (in which it is designated as defendant in the original complaint herein) without having indicated its status as a trust. Further School, or those controlling its destiny, formed a corporation with a name very similar to the trade name of the trust for the purpose of holding title to some, but not all,[4] of the vessels owned by School, i. e., the trust. Also, School has paid for some obligations billed to that corporation in its corporate name for work done on vessels in fact owned by School as a trust. In this case, the complaint sets forth the full and correct name of the corporation, the full and correct trade name of the trust, and the full and correct name of the Union. In this case, also, service was effected upon the manager of the office in which a major portion of School's substantial business activities are conducted. Against the composite totality of such a factual background, and in the absence of any controlling Maryland precedent, this Court concludes that School has so acted that it would be inequitable to permit it to hide behind the technical defense it asserts herein and that therefore in this case School has the capacity to be sued in its trade name and served through its managing agent. Defendant School's motion to dismiss is accordingly hereby denied.

## II.

Because of the closeness of the question posed by School's aforesaid motion to dismiss, plaintiff has asked this Court to grant plaintiff's motion to amend his complaint[5] to bring the trustees, in their representative capacity, into this suit, with the amendment, pur-

4. And not including the vessel herein involved.

5. Plaintiff has asked that such amendment be allowed even if, as this Court has held under I above, School's motion to dismiss is denied.

suant to Federal Civil Rule 15(c), relating back to the filing date of the original complaint, namely, November 4, 1971, three days before the third anniversary of the alleged injuries to plaintiff. Service upon School's managing agent was effected on November 17, 1971. Service upon the Union was effected on November 16, 1971. Earlier, on November 10, 1971, service was effected on the corporate defendant. Plaintiff seeks to have its amendment naming the individual trustees of School as defendants become effective not later than a date before the lapse of the three-year period, that is, not later than November 7, 1971.

■ Plaintiff's suit herein is predicated on general maritime law. Giddens v. Isbrandtsen Co., 355 F.2d 125, 126 (4th Cir. 1966); Larios v. Victory Carriers, Inc., 316 F.2d 63, 65 (2d Cir. 1963). Thus, there is no "rigid limitation" period. *Giddens, supra* 355 F.2d at 126. Rather, courts are wont to apply the doctrine of laches, and in so doing, "customarily follow by analogy the state statute of limitations and hold the claim barred unless the . . . [plaintiff] shows special circumstances excusing the delay." Wilson v. Northwest Marine Iron Works, 212 F.2d 510, 511 (9th Cir. 1954). Md.Ann.Code art. 57, § 1 provides a three-year limitations period in negligence actions. That provision would appear to provide the statutory measuring rod herein.

Rule 15(c)'s requirement that the "claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . .," is clearly satisfied, for the only occurrence in question is the alleged injury to plaintiff on November 7, 1968.

■ Additionally, Rule 15(c) requires that the party to be brought in by the amendment receive notice "within the period provided by law for commencing the action against him" and also that such party receive "such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and [further that such party] knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Defendant contends that that notice was not communicated to the trustees within three years after November 7, 1968. But that contention is not supported by the uncontroverted evidence. A suit relating to the accident which is the subject of this case was filed by plaintiff in the Eastern District of Virginia, Norfolk Division, on September 25, 1970, naming as the sole defendant the Union defendant herein. That action was voluntarily dismissed by plaintiff without prejudice after plaintiff's counsel was informed by local Baltimore counsel for the Union, Solomon Kaplan, Esq., that the defendant School and not the Union was the owner of the vessel in question. Mr. Kaplan, though he is not counsel for any of them in this case, has acted at one or more times as local counsel for all three defendants herein. Mr. Kaplan, appearing at the request of this Court, stated in this case on the record that "he certainly didn't expect plaintiff to drop his cause," i. e., the original suit brought in Norfolk. Similarly, plaintiff's counsel has made affidavit that he indicated to Mr. Kaplan, when plaintiff dropped the Norfolk suit, that plaintiff "would sue the appropriate owner." It would appear that the knowledge of Mr. Kaplan constituted sufficient notice within the meaning of Federal Civil Rule 15(c) to the trustees prior to November 7, 1971.

■ But even if this Court did not so find, defendant's argument that service of process on November 17, 1971 does not meet the requirements of Rule 15(c) can only succeed if that Rule frowns automatically upon service effected ten days after the running of the analogous three-year Maryland limita-

tions period. Such an argument cannot be harmonized with the Fourth Circuit's view, as expressed by Judge Bryan in Giddens v. Isbrandtsen Co., *supra* 355 F.2d at 126–127, that, "in the enforcement of a maritime claim admiralty prefers the equity rule of laches as opposed to any rigid limitation. . . . Laches is sustainable only on proof of both of two elements: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense'. Costello v. United States, 365 U.S. 265, 282, [81 S. Ct. 534, 5 L.Ed.2d 551] (1961)." [6] Thus, the parameters of the period referred to in Federal Civil Rule 15(c) and therein "provided by law for commencing the action" are marked in an admiralty suit involving personal injuries, by the more fluid boundaries of laches. If, under that test, plaintiff had filed the instant suit on November 17, 1971 (instead of effecting service on that date),[7] the trustees of the defendant School would not have prevailed on a motion to dismiss, since a defendant seeking a dismissal for laches "has the burden of . . . proving inexcusable or inadequately excused delay." *Giddens, supra* at 128. In regard to that burden, Judge Bryan has stated (at 128):

> Initially this obligation is ordinarily satisfied by the defendant's noting that the action was not commenced

within the statutory time-parallel of laches, or by facts otherwise revealing a lack of vigilance. The second element—prejudice—must also be demonstrated by the defendant, but in this he is aided by the inference of prejudice warranted by the plaintiff's delay. The plaintiff is then to be heard to excuse his apparent laggardness and to prove facts manifesting an absence of actual prejudice.

However, even if the delay be beyond the preceptive statutory period, or appear inordinate on other considerations, and although it be explained only insubstantially or not at all, the defendant is not relieved of his burden of proving prejudice. But he may either rest on the inference alone or introduce additional evidence.

In the end, the court weighs the excuse, or absence of excuse, against the actual or reasonably anticipated injury. On the equities then evident, the court allows or disallows the plea.

█ In this case, plaintiff seeks to excuse his delay in instituting action by his difficulties in determining the proper vessel owner and in procuring local counsel. Even assuming those excuses not to be too strong, a "weak excuse may suffice if there has been no prejudice." *Giddens, supra* at 129 quoting Judge Friendly's words in Larios v. Victory Carriers, Inc., *supra* 316 F.2d at

---

6. The plaintiff in *Giddens* sued within three years, but after more than two years, from the date of the alleged accident. In *Giddens*, there was available "[a]s the more pertinent analogy . . . the 3-year indulgence of the Jones Act," *Giddens, supra* at 126, which Judge Bryan characterized (at 127) as "a more logical and acceptable polestar" than the Virginia two year personal injury limitations period. Thus, the plaintiff did not apparently need the beneficent fluidity of laches to save him from the more rigid bar of limitations. But Judge Bryan's reasoning in *Giddens* speaks generally to the applicability of state limitations provisions in personal injury suits governed by the law of ad-

miralty, and emphasizes the subjection of those limitations provisions to the principles of laches. Accordingly, Judge Bryan's words in *Giddens* provide applicable guidelines herein.

7. In view of the close interrelationship of the trust, i. e., School, and the corporate defendant, there is little merit in defendant School's contention of lack of notice to the trustees of School when the corporate defendant was served on November 10, 1971. Thus, the latest date which the trustees of the defendant School could be heard to assert is November 10, 1971, only three days after the November 7, 1971 deadline, a short period indeed in the context of laches.

67.[8] Even assuming *arguendo* delay in notification to the trustees defendant School has not alleged any prejudice flowing from such delay. Indeed, the existence of any such prejudice is hard to conceive in this case in the light of the institution of this suit on November 4, 1971 followed by service upon the closely related corporate defendant on November 10, 1971.[9]

### III.

In sum, plaintiff's motion to amend effective November 4, 1971 is grounded upon sound principles. An appropriate Order granting that motion and also denying defendant's motion to dismiss will accordingly be entered.

8. Judge Friendly also added (at 67) ". . . an exceedingly good one might still do even when there has been some [prejudice]."

