397 F.Supp. 784 (1975)
Arthur Sanford LIMOUZE, Plaintiff,
v.
M. M. & P. MARITIME ADVANCEMENT, TRAINING, EDUCATION AND SAFETY PROGRAM, et al., Defendants.
Civ. A. No. M-74-911.
United States District Court, D. Maryland.
June 10, 1975.
*785 N. Gregory Silberberg, Baltimore, Md., for plaintiff.
Edward Pierson and W. Michel Pierson, Baltimore, Md., for defendants.

MEMORANDUM AND ORDER
JAMES R. MILLER, Jr., District Judge.
Plaintiff, Arthur Sanford Limouze, filed suit against the "International Organization of Masters, Mates & Pilots, Maritime Advanced Training Education and Safety Program (A New York Trust)" and the International Organization of Masters, Mates & Pilots, AFLCIO (A voluntary Unincorporated Labor Organization) for breach of an employment contract. Subsequently, the Trust filed a motion to dismiss or, in the alternative, a motion to quash return of service of summons (paper 3). The basis of the Trust's motion was that the Trust was not a legal entity and lacked capacity to be sued. Additionally, the Trust claimed that plaintiff had misstated its name.
By leave of court (paper 7), plaintiff amended his complaint to bring suit against the M. M. & P. Maritime Advancement, Training, Education and Safety Program (the correct name of the Trust) and against Martin F. Hickey and Thomas F. O'Callaghan, individually and as trustees (paper 8). Since then, the Trust and the two trustees have each moved to dismiss the amended complaint (papers 12, 14, and 23).
The M. M. & P. Maritime Advancement, Training, Education and Safety *786 Program [MATES Program] was established pursuant to an Agreement and Declaration of Trust, dated January 6, 1967 (paper 12, Exh. A). According to the Preamble and Witness clauses of the Trust Declaration, the agreement was executed between the International Organization of Masters, Mates & Pilots  Offshore Division [Organization] and various Companies[1] as a result of collective bargaining and for the purpose of creating the aforesaid MATES Program.
Article II, ¶ 1 of the Trust Agreement creates the M. M. & P. Maritime Advancement, Training, Education and Safety Program Fund to be used for operating the MATES Program. According to ¶ 3 of Article II, said fund is to be used by
"The Trustees . . . in their discretion to evolve and provide a broad program for the betterment of Licensed Deck Officers which may include, without limitations, training for new licenses, training for upgrading of licenses and training leading to the sharpening of skills of such officers and calculated to increase safety and efficiency of operation.
"In connection with the sound and efficient maintenance and operation of the Program, monies in the Fund may be disbursed by the Trustees as they determine necessary, including, but without limitation, for:
"a. Expenses of administration and maintenance of a teaching staff. . . ."
Article III, ¶ 1, establishes that the operation of the MATES Program shall be the joint responsibility of 14 trustees, four of whom are appointed by the Organization, and 10 of whom are appointed by the companies. The Trust Agreement sets forth in Article IV the authority of the Trustees, and Article V contains the Trustees' obligations. Paragraph 7 of Article V states:
"Actions in Good Faith. No Trustee shall be held liable for any action taken or omitted by him in good faith, nor for the acts of any agent or employee selected by the Trustees, nor for any act or omission of any other Trustee."
Additionally, Article VII, § 2 recites that the Declaration of Trust was executed in New York
"and is accepted by the Trustees in the State of New York, and regardless of the domiciles of the parties hereto, shall be interpreted and governed in accordance with the laws of that State."
Plaintiff alleges in this diversity action that from August 12, 1971 through May 11, 1974 he was employed by the aforementioned MATES Program and by defendants Hickey and O'Callaghan under a written employment contract. The contractual agreement (Exh. 1 to paper 8) states that it is made by and between the Maritime Advancement, Training, Education and Safety Program and Sanford Limouze. The contract was signed by the Maritime Advancement, Training, Education and Safety Program, by T. F. O'Callaghan, Chairman, and M. F. Hickey, Secretary. Plaintiff Sanford Limouze also signed the contract.
Under the terms of the contract, plaintiff alleges that he agreed to become the Executive Director of the Maritime Institute of Technology and Graduate Studies, the MATES Program School, for the period August 26, 1971 through August 31, 1976. Plaintiff claims that the Trust, acting through defendants Hickey and O'Callaghan, wrongfully and improperly terminated *787 plaintiff's employment contract on May 11, 1974.

I. Defendants' Motions to Dismiss

A. The Defendant Trust

The M. M. & P. Maritime Advancement, Training, Education and Safety Program has moved to dismiss the complaint on the ground that the defendant is a trust and lacks capacity to be sued under F.R.Civ.P. 17(b). The defendant Trust further argues that jurisdiction over the corpus of the trust may not be had unless all the trustees are joined and served (paper 13). In brief, defendant Trust's position in this regard is based on the contention that trust law requires unanimity of trustee action in any act taken with regard to the trust.

B. The Trustee Defendants

Pursuant to F.R.Civ.P. 12(b)(7) [sic] and F.R.Civ.P. 19(a), the defendant trustees have moved for dismissal of the action, claiming that as a matter of state trust law and federal procedure all the trustees are indispensable parties and must be joined to this action.
As a matter of state trust law, the defendant trustees argue that the trust corpus may be reached by a creditor only if all trustees are joined to the action. Thus failure to join all the trustees, according to the defendants, would prevent the defendant trustees from being able to take any action with regard to the corpus of the trust, and might render the two defendant trustees liable for the entire claim. Consequently, defendant trustees argue that all trustees must be joined to assure complete relief among those already parties to this suit.
As a matter of federal procedure, the defendant trustees argue that joinder of all trustees is required because there is a risk of multiple inconsistent adjudications if all trustees are not joined. Furthermore, it is argued that the contract was entered into on behalf of all trustees, and is therefore a joint obligation for which all obligors on the contract must be joined.
For the reasons set forth below, defendant Trust's motion to dismiss will be granted, and defendant trustees' motions to dismiss will be denied.

II. The Trust's Capacity to be Sued

In plaintiff's initial opposition (paper 5) to the defendant Trust's first motion to dismiss, plaintiff "admitted that a trust has no existence independent of the trustees" and further stated that a trust is not a legal entity. However, plaintiff maintained that jurisdiction over the trust corpus did not require joinder of all trustees (paper 17).
In opposition to the defendants' subsequent motions to dismiss, plaintiff argued that, under the New York law made applicable to the instant case pursuant to Article VII, § 2 of the Trust instrument, the MATES Program is a business trust within the meaning of New York General Associations Law. Article I, § 2(2) (McKinney's Consol. Laws, c. 29, 1937). As a business trust under New York law, plaintiff argues that the defendant trust is a legal entity and may be sued as such by service of process on its President (Chairman) or Treasurer. (Papers 18, 19, and 20). See Article III, § 13 New York General Associations Law (McKinney 1961).
While Maryland law permits an unincorporated association having a recognized group name to be sued in its own name under certain circumstances, Md. Ann.Code, Article 23, § 138, there is no Maryland authority recognizing a trust as an unincorporated association for purposes of suability. See White v. Lundeberg Maryland Seamanship School, Inc., 57 F.R.D. 128, 130 (D.Md.1972). But even assuming the applicability of New York law to the question of capacity to be sued,[2] as plaintiff urges, the *788 court must disagree with plaintiff's conclusion that the defendant Trust is a legal entity for purposes of suability.
Article I, § 2(2) of New York General Associations Law (McKinney 1937) provides:
"The term `business trust' means any association operating a business under a written instrument or declaration of trust, the beneficial interest under which is divided into shares represented by certificates."
(Emphasis added).
Article III, § 13, of New York General Associations Law (McKinney 1961), provides in pertinent part:
"§ 13. Action or proceeding against unincorporated association
"An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section."
The New York rule for the definition of a business trust which requires certificates representing shares in the trust conforms to the general rule in this regard. In G. Bogert, Trusts & Trustees, § 291 at 572 (2d ed. 1960), it is said that a business trust denotes
"an unincorporated organization created for profit under a written instrument or declaration of trust, the management to be conducted by compensated trustees for the benefit of persons whose legal interests are represented by transferable certificates of participation, or shares."
(Emphasis added). See also 12 C.J. S. Business Trusts, § 1(a).
Whether or not the defendant Trust otherwise qualifies as a business trust, the Trust has not issued certificates representing shares in the trust. Plaintiff relies on the case of Denmark Cheese Association v. Hazard Advertising Company, 59 Misc.2d 182, 298 N.Y.S.2d 98 (Sup.Ct.1969), modified, 33 A.D.2d 761, 305 N.Y.S.2d 1019 (1969), for the proposition that an entity may nevertheless qualify as a business trust under New York law even where it does not issue certificates of shares to its members.
On Appeal to the Appellate Division, however, the New York Supreme Court's decision in Denmark Cheese was modified to reach the opposite result from that reached by the lower court. Since the plaintiff association did not issue shares or certificates representing shares and it did not operate for profit, the Appellate Division concluded that the plaintiff association was not a "business trust" as defined in Article I, § 2(2) of New York's General Associations Law.
Assuming the applicability of New York law on this question, and without deciding whether the defendant trust otherwise satisfies the requirements of a business trust, the court is of the view that, in the absence of issuance of certificates or shares by the defendant Trust, the defendant Trust cannot properly be characterized as a business *789 trust within the meaning of Article 1, § 2(2) of New York General Associations Law. The question then becomes whether the defendant Trust, albeit not a business trust, is subject to suit as a legal entity.
In the absence of statute or case law, the weight of authority is clear that the trust estate is not a person in the eyes of the law and does not have the capacity to be sued as an entity. G. G. Bogert and G. T. Bogert, Law of Trusts, § 125 at 455 (5th ed. 1973); Plasteel Products Corporation v. Eisenberg, 170 F.Supp. 100 (D.Mass.), aff'd sub nom, Plasteel Products Corp. v. Helman, 271 F.2d 354 (1st Cir. 1959). That the Trust as an entity does not have the capacity to be sued has been stated in several cases. In White v. Lundeberg Maryland Seamanship School, Inc., supra, 57 F.R.D. 128 (D.Md.1972), the plaintiff brought suit against a trust, among others, for injuries sustained by him as a shipyard employee. Plaintiff's injuries were incurred by him while he was performing maintenance services for a vessel owned by trustees of the defendant Trust. The Trust filed a motion to dismiss the complaint on the ground that plaintiff should have named the trustees of the defendant Trust as defendants and not the Trust itself as an entity.
Pursuant to Rule 17(b), F.R.Civ.P., Judge Kaufman, in White v. Lundeberg, etc. supra, looked to Maryland law to determine if the defendant Trust had the capacity to be sued as an entity in Maryland. Md.Ann.Code, Art. 23, § 138, provides:
"Every unincorporated association or joint-stock company having a recognized group name may sue or be sued in such group name in any action affecting the common property, rights and liabilities of such association or joint-stock company."
However, in the absence of any Maryland authority classifying a trust as an association within the meaning of Md. Ann.Code, Art. 23, § 138, Judge Kaufman declined to find the aforementioned Maryland statute applicable to the defendant Trust. Instead, Judge Kaufman stated:
"The general rule is that a trust as an entity does not have the capacity to be sued and that that capacity exists only in its trustees."
57 F.R.D. at 130.[4]
In Coverdell v. Mid-South Farm Equipment Association, Inc., 335 F.2d 9 (6th Cir. 1964), an insurance agent sued the Association and the trust created by it for breach of contract and damages. On appeal to the Sixth Circuit, the defendants argued that the trust could not be sued as an entity. The court agreed, finding "that the trustees would have been the proper parties defendant . . . rather than the trust." 335 F.2d at 13.
In Yonce v. Miners Memorial Hospital Assn. Inc., 161 F.Supp. 178 (W.D.Va. 1958), plaintiffs brought suit against the United Mine Workers of America Welfare and Retirement Fund, among others, for alleged Sherman Act violations. The trustees of the Fund were not named as defendants, and plaintiffs sued the Fund as an entity by service of process on only one trustee. The Fund moved to dismiss the complaint, alleging in part that it was a trust over which the court had no jurisdiction. After determining that the Fund was, in fact, a trust, the court granted the Fund's motion to dismiss. In so doing, the court held that a trust may not be sued directly for the torts alleged to have been committed by it or its trustees.
*790 While the court in Yonce was not faced with a breach of contract action, as in the instant case, the court there recognized that
"a suit by strangers to the trust must be brought against the trustees thereof individually and not against the fictional entity." 161 F.Supp. at 188.
The court further stated:
"Even in cases in which the trustees, in the administration of the trust, are required to carry on business transactions and in the conduct of the business incur contractual obligations for the benefit of the trust, the trust estate can only be reached by the injured party suing the trustees in their representative capacity." (Emphasis added). Id.

Based on the foregoing authority, this court holds that the defendant Trust is not a proper party defendant and that jurisdiction over the defendant Trust cannot be obtained by service of process on two trustees. Accordingly, defendant Trust's motion to dismiss will be granted.

III. The Trustees' Liability for Contract

In the course of the administration of a trust, obligations may be incurred to third parties arising out of contracts made by a trustee. III Scott on Trusts, § 261 at 2220 (3d ed. 1967). The question then arises as to the liability on such a contract and the remedies of the creditor. Hanson v. Birmingham, 92 F.Supp. 33 (N.D.Iowa 1950); G. G. Bogert and G. T. Bogert, Law of Trusts, § 125 at 454-455 (5th ed. 1973).
As previously indicated, the contract for which plaintiff brings suit was entered into on behalf of the Trust by the two trustees who are parties-defendant to this action. The propriety of their status as defendants can be ascertained by reference to the general law of trusts.
Where a trustee in the administration of the trust makes a contract with a third person, the trustee is personally liable on the contract unless such liability is clearly excluded in the contract. III Scott on Trusts, § 262 at 2221 (3d ed. 1967); G. Bogert, Trusts & Trustees, § 712 at 445 (2d ed. 1960); G. G. Bogert and G. T. Bogert, Law of Trusts, § 125 at 455 (5th ed. 1973). This is the law in both Maryland and New York. See Knipp v. Bagby, 126 Md. 461, 95 A. 60 (1915); Boyle v. Rider, 136 Md. 286, 110 A. 524 (1920); East River Savings Bank v. 245 Broadway Corp., 284 N.Y. 470, 31 N.E.2d 906 (1940).
The principle of the trustee's personal liability on his contracts has long been recognized by the Supreme Court. In Taylor v. Davis, 110 U.S. 330, 4 S.Ct. 147, 28 L.Ed. 163 (1884), the Supreme Court stated:
"When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee . . . he is personally bound by the contracts he makes as trustee. . . . Of course, when a trustee acts in good faith for the benefit of the trust, he is entitled to indemnity himself for his engagements out of the estate in his hands . . .." 110 U.S. at 334-335, 45 S.Ct. at 150.[5]
A trustee who is personally liable on a contract can be sued upon it in his individual capacity, and not as a representative. G. Bogert, Trusts & Trustees, § 712 at 445-446 (2d ed. 1960); III Scott on Trusts, § 262 at 2223 (3d ed. 1967); G. G. Bogert and G. T. Bogert, Law of Trusts, § 125 at 455 (5th ed. 1973). If the contract was properly made by the trustee in the administration of the Trust, he is entitled to indemnity or reimbursement from the *791 trust estate. Thus where the trust estate is sufficient to discharge the obligation, the trustee's personal liability is ultimately satisfied with funds of the trust. III Scott on Trusts, supra, § 262 at 2223-2224; G. G. Bogert and G. T. Bogert, Law of Trusts, supra, § 127 at 461 et seq.; G. Bogert, Trusts & Trustees, supra, § 716 at 474 et seq., § 718 at 487.
In the proper performance of his duties, a trustee may enter into an intra vires contract which expressly excludes the trustee's personal liability. G. Bogert, Trusts & Trustees, supra, § 714 at 460; III Scott on Trusts, supra, § 263 at 2225; G. G. Bogert and G. T. Bogert, Law of Trusts, supra, § 126 at 457. By such action, the trustee gives the contract creditor a direct remedy against the trustee in his representative, not individual, capacity. Where the trustee can be sued as trustee, satisfaction of any judgment may be derived from trust funds. G. Bogert, Trusts & Trustees, supra, § 715 at 467; G. G. Bogert and G. T. Bogert, Law of Trusts, supra, § 126 at 459, § 128 at 464; III Scott on Trusts, supra, § 271 at 2283.
Whether the two trustee defendants acted in their individual or representative capacity when contracting with plaintiff is not a question now before the court. For purposes of the trustees' motions to dismiss, the resolution of that question is not significant. In the event of either their personal or representative liability, it is still the contracting trustees who may be named in a suit on the contract by the contract creditor.
Nor must all trustees of the trust be named as defendants in a suit by the creditor on the contract, as defendants contend. If co-trustees join in making a contract, they are jointly and severally liable on it. G. G. Bogert and G. T. Bogert, Law of Trusts, supra, § 127 at 463; G. Bogert, Trusts & Trustees, supra, § 716 at 482. But where there are co-trustees who do not join in making the contract, they are not liable on it. G. G. Bogert and G. T. Bogert, Law of Trusts, supra, § 125 at 457. In G. Bogert, Trusts & Trustees, supra, § 722 at 515, the rule has been stated as follows:
"Where there are two or more trustees, no one trustee can bind the others to personal contract liability, unless expressly authorized to do so. If part of the group of trustees executes a contract in behalf of the trust, they are personally obligated upon it, and recovery may be had from their personal estates, but the non-contracting trustee cannot be sued by the contract creditor, whether the inactive trustee should have signed the contract or not. Where the terms of the trust or a statute authorize a majority of the trustees to act in making contracts, the minority which does not join in the execution of any contract is not personally liable to the contract creditor."
Accord, III Scott on Trusts, supra, § 262 at 2224.
Furthermore, by the terms of the trust instrument, the requirement of unanimity of trustee action may be dispensed with. III Scott on Trusts, supra, § 194 at 1611. Numerous provisions in the trust instrument at issue provide that the trustees' powers may be exercised by a majority of the trustees. See, e. g., Art. IV, ¶¶ 8, 9, and 10. Whether the two defendant trustees who signed the contract with plaintiff were required under the trust instrument to have their fellow trustees join in making the contract goes to the question of whether the defendant trustees' action was intra or ultra vires, and not to the question of whether the other trustees must be joined to this action.
Additionally, in view of the fact that as a matter of trust law the satisfaction of a judgment on any intra vires contract is ultimately satisfied from the trust estate, and in view of the fact that the trust instrument itself exempts the good faith actions of a trustee from liability (Art. V, § 7), it is clear that the two trustee defendants are *792 proper parties to this action and that their co-trustees need not be joined as parties.
Accordingly, the court having determined that a hearing is not needed (Local Rule 6) and for the reasons set forth above, it is this 10th day of June, 1975, by the United States District Court for the District of Maryland, ordered:
1. That the motion of the MATES Program to dismiss be, and the same hereby is, granted; and
2. That the motions of Martin F. Hickey and Thomas G. O'Callaghan to dismiss be, and the same hereby are, denied.
NOTES
[1] The term "Companies" is defined in Article 1 ¶ 1, as follows:

"1. Companies. The term "Companies" as used herein shall mean the various Employers of Licensed Deck Officers employed under the provisions of collective bargaining agreements with the Organization, including the Pacific Maritime Association as representative of various Employers, and who are, or who may hereafter become, signatories hereto. (Amendment No. 2  Adopted June 22, 1971)."
[2] Rule 17(b), F.R.Civ.P., provides:

"(b) Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., §§ 754 and 959(a)." (Emphasis added).
[4] While Judge Kaufman recognized the defendant Trust's technical defense, he nevertheless denied its motion to dismiss. Due to the manner in which the defendant Trust conducted its business activities, the court concluded that it would be inequitable to permit the trust "to hide behind the technical defense." 57 F.R.D. at 130.
[5] The above passage was quoted in part in Greenough v. Tax Assessors, 331 U.S. 486, 494 n. 19, 67 S.Ct. 1400, 91 L.Ed. 1621 (1947).