EAST RIVER SAVINGS BANK, Respondent, *v.* 245 BROADWAY CORPORATION et al., Defendants, and EPHRAIM SAMUELS et al., Appellants.

Argued November 25, 1940; decided December 31, 1940.

*Frederick E. Crane, Irving H. Dale* and *Robert R. Michlin* for appellants.

*Robert W. Bernard* and *Lewis S. Bowdish* for respondent.

RIPPEY, J. On February 2, 1927, Sophie Samuels conveyed real property, located at 245 Broadway in the city of New York, to the appellants as trustees by a written instrument in which she created an irrevocable trust for her own benefit and for the benefit of her children. The conveyance was duly recorded in the office of the Register of the County of New York on April 26, 1927. The conveyance was made subject to the lien of a mortgage held by the Equitable Trust Company as security for a loan of $250,000 and to the lien of a second mortgage for $75,000. There was no assumption of payment of the mortgages by the trustees. One of the trustees was the husband of the grantor, two were her brothers-in-law and the fourth was the attorney for and friend of the Samuels family. She provided in the trust instrument that the trustees should not receive any compensation for their services and should not be liable for any damage or otherwise, except for misconduct or gross negligence. Among other things, the trustees had express power to sell, lease, mortgage or exchange the real property which formed the corpus of the

trust and to execute and deliver any other instrument which might be desirable and necessary to carry out that power. The trustees accepted the trust and entered upon the discharge of their duties and have since continued in the discharge thereof.

On January 5, 1928, the appellants executed and delivered to the plaintiff a bond in which they acknowledged that they were indebted to the plaintiff in the sum of $30,000 and a mortgage upon the aforesaid property as security for the payment of the loan. The bond begins with this clause: " KNOW ALL MEN BY THESE PRESENTS, That we, EPHRAIM SAMUELS, JULIUS SAMUELS, ISIDORE SAMUELS and CLINTON T. TAYLOR, as Trustees under a Deed of Trust dated February 2nd, 1927, recorded in the office of the Register of the County of New York, April 26th, 1927, in Liber 3581 of Conveyances, Page 471, hereinafter designated as the obligor, do hereby acknowledge ourselves to be justly indebted to EAST RIVER SAVINGS BANK, a domestic banking corporation, having its principal place of business at Nos. 291–3–5 Broadway, Borough of Manhattan, City of New York, hereinafter designated as the obligee, in the sum of Thirty Thousand ($30,000) dollars lawful money of the United States, which sum I, said obligor do hereby covenant to pay said obligee, its successors or assigns, on demand, with interest thereon, to be computed from the 5th day of January, 1928, at the rate of five and one-half per centum, per annum." Each of the defendants-appellants signed his name and attached his seal and underneath the names was written " As Trustees above mentioned " and the instrument was acknowledged by them as trustees. The mortgage begins with a similar clause. In the bond, it will be observed, the defendants are referred to as a class and designated as the *obligor*. In the mortgage the defendants are also designated as a class and referred to throughout the instrument as the *mortgagor*. The mortgage is signed by each of the appellants, under seal, and contains, underneath the names, " As Trustees above mentioned " and was acknowledged by them as trustees.

Among other things, the mortgage contained various covenants by which the *mortgagor* covenants to pay the indebtedness therein provided, to keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee, to prevent waste, that the whole of the principal sum shall become due after default in the payment of any installment of principal or of interest for thirty days or after default in the payment of any tax, water rate or assessment for thirty days after notice and demand to pay all taxes, assessments or water rates, and upon default thereof that the whole of the principal sum shall become due at the option of the mortgagee, etc.

On December 30, 1927, an agreement was entered into between the East River Savings Bank, as party of the first part, and defendants-appellants, " As Trustees under a Deed of Trust dated February 2nd, 1927, recorded in the Office of the Register of the County of New York, April 26th, 1927, in Liber 3581 of Conveyances, Page 471, hereinafter designated as the party of the second part." It will here be observed that the instrument designates the defendants as a class, *as the party of the second part,* and throughout the instrument similar reference to them is made. By that instrument the mortgage formerly held by the Equitable Trust Company which had been acquired by assignment by plaintiff and the mortgage for $30,000 were consolidated into a single first mortgage and joint lien upon the premises for the principal sum of $280,000 with interest thereon to be computed from January 5, 1928, at the rate of five and one-half per cent per annum, and again the appellants, as in the case of the $30,000 mortgage instrument, covenanted in the same form as in the latter instrument *as a single party* except that the covenant for payment was to the effect that such party would pay the sum of $280,000. This instrument was also signed by the individual defendants-appellants under seals with the entry after their names " As Trustees under a Deed of Trust " and the instrument was acknowledged by them as trustees. Simultaneously the existing second mortgage

of $75,000 was subordinated to the consolidated first mortgage.

Default having occurred, an action was brought to foreclose the mortgage in which judgment was entered decreeing foreclosure and the defendants-appellants were held individually liable for all amounts found due and owing to the plaintiff on account of the foregoing transactions. The trial court found and concluded as a basis for holding the appellants individually liable that they, by those instruments, " in consideration of the consolidation of said bonds and mortgages and of the extension of time for the payment of the obligations secured thereby, and of other valuable consideration, the receipt whereof was therein acknowledged, jointly and severally covenanted and agreed that they would pay the principal sum of Two hundred Eighty thousand Dollars ($280,000) on the 1st day of February, 1933 and interest thereon meanwhile at the rate of five and one-half per centum per annum from the 5th day of January, 1928 semi-annually on the first days of February and August in each year and to comply with the other terms of said bonds and mortgages," etc., and declined to find, at the request of appellants, that it was not the intent of the parties that the appellants should be individually and personally obligated under the aforesaid instruments. The Appellate Division has affirmed by a divided court the judgment entered upon the findings of the Special Term.

The consideration for the execution and delivery of the foregoing instruments was amply alleged in the complaint and admitted by the answer. Those instruments were executory contracts since, made upon sufficient consideration, they provide that something remains to be done or not to be done by one or both the parties (12 American Jurisprudence, Contracts, § 9, pp. 506, 507; *Farrington* v. *Tennessee*, 95 U. S. 679). The court has found that there was a new and independent consideration for the execution of the various instruments not founded upon the contract or obligation of the creator of the trust. It is the settled law, in the absence of evidence to the contrary and subject to exceptions not here pertinent, that where the contracts made

by trustees are executory, upon a new and independent consideration and the liability claimed is not based upon any obligation of the creator of the trust, in spite of the fact that they are not made for the benefit of the trustees but rather for the benefit of the trust estate, as to third parties a personal obligation on the part of the trustees is created and the third party may not look to the trust estate to satisfy his obligations (*Austin* v. *Munro*, 47 N. Y. 360, 366; *O'Brien* v. *Jackson*, 167 N. Y. 31). " The addition of an official character, to the signatures of executors and administrators, in executing written contracts and obligations has no significance, and operates merely to identify the person and not to limit or qualify the liability " (*Schmittler* v. *Simon*, 101 N. Y. 554, 558), except, when a negotiable instrument is under consideration, as and to the extent the rule may be modified by the provisions of section 39 of the Negotiable Instruments Law (Cons. Laws, ch. 38).

All parties here insist that the intent as to the extent and character of the liability of the appellants appears from the face of the instruments and that parol evidence as to their intent is consequently inadmissible. However, they do not read the contract alike. Plaintiff asserts that the instruments, as written, indicate that appellants intended to be bound individually or, in any event, they are so bound under the authorities to which reference is made above. Appellants, on the other hand, read the instruments as indicative of their intent to be bound only in their fiduciary character. If not, they say, because of ambiguity, parol evidence may be received to show the circumstances surrounding the execution and delivery of the instruments and any understanding between the parties as to the character of the liability intended to be imposed (*Chouteau* v. *Suydam*, 21 N. Y. 179; *Megowan* v. *Peterson*, 173 N. Y. 1; *New Georgia Nat. Bank* v. *Lippmann*, 249 N. Y. 307; *Bank of Topeka* v. *Eaton*, 100 Fed. Rep. 8; affd., 107 Fed. Rep. 1003 [First Circuit]; 2 Scott on the Law of Trusts, § 263; 4 Bogert on the Law of Trusts and Trustees, § 773, and cases cited; 65 C. J. pp. 790, 791). Parol evidence as to

the intent of the parties was offered and, to some extent, received in evidence, but it was later correctly stricken out by the trial judge on the ground that it was inadmissible under the parol evidence rule. Intent to bind the trust estate rather than themselves individually cannot exempt the fiduciaries from personal liability if in the instruments as written the fiduciaries have not limited their liabilities in a manner which would make them enforcible only out of the trust estate. Unless we are prepared to overrule our previous decisions, which are in accord with the general principles applied in other common-law jurisdictions, the problem for us is not whether the appellants intended to assume the personal liability but whether, under the contract as written, they limited their obligation so as to exclude personal liability for its breach.

The appellants might have absolved themselves from any personal liability by inserting in the instruments a clause to the effect that they could not be held personally liable (*Pumpelly* v. *Phelps*, 40 N. Y. 59; *Knipp* v. *Bagby*, 126 Md. 461; *United States Trust Co.* v. *Stanton*, 139 N. Y. 531; *Austin* v. *Munro*, 47 N. Y. 360, 366; 3 Bogert on Trusts, § 714, and cases cited; *Taylor* v. *Davis*, 110 U. S. 330; *Wachtel* v. *Rosen*, 249 N. Y. 386). In none of the aforesaid instruments was there a specific provision exempting the trustees from personal liability. Nevertheless, the recital in the instruments of the character in which the trustees were acting, as a class and not individually or jointly and severally, their signing and executing as trustees under the trust instrument, the fact that the instruments refer to the trust instrument and the place of its public record, gave notice to the plaintiff of all of the provisions of the trust agreement, the character under which they acted and under which they had authority to act and established the limitation of their liability as individuals. Under those circumstances, the instruments on their face do not create a personal liability. In the light of the circumstances surrounding their execution and delivery, they cannot properly be read in any other way. We need not resort to parol

evidence to discover the understanding between the parties as to the character of the liability intended to be imposed. That appears in the language of the instruments themselves.

Prior to the commencement of the action for foreclosure the rate of interest was reduced to one and one-quarter per cent and such reduction was to be in effect until terminated by the plaintiff. Two quarterly interest installments were paid to the plaintiff at that rate but appellants defaulted in the payment of the third installment as it became due and paid no interest whatever for some time prior to the commencement of the action. When the interest was reduced plaintiff retained the right to terminate the arrangement. It was terminated by the commencement of the action of foreclosure and the demands for payment of interest at the rate of five and one-half per cent, and interest became due and payable at the rate of five and one-half per cent from August 1, 1937, to which date interest at one and one-quarter per cent had been paid by appellants and accepted by the plaintiff, as the courts below have held.

The judgments so far as appealed from should be reversed and the matter remitted to the Special Term for entry of the appropriate judgment in accordance with this opinion, with costs in all courts.

CONWAY, J. (dissenting). A deficiency judgment against the trustees personally was proper. The trustees could not bind the estate. In *O'Brien* v. *Jackson* (167 N. Y. 31) this court said (at p. 33): "The general rule is well settled in this state that executors or trustees cannot, by their executory contracts, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, bind the estate and thus create a liability not founded upon the contract or obligation of the testator." Speaking of the rule, it was said in *Austin* v. *Munro* (47 N. Y. 360, 366): "The rule is too well established in this State to be questioned or disregarded; and any departure from it would be mischievous."

The use of such phrases as "as trustee, etc." does not relieve the trustee from personal liability. They are merely

descriptive. In *Taylor* v. *Davis* (110 U. S. 330, 334, 335) the United States Supreme Court wrote: "A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts *as such*, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him."

The trustee is personally liable unless the contract, or other instrument, expressly relieves him of liability. In *Taylor* v. *Davis* (*supra*) the court said (at p. 335): " If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate."

The court took defendants' testimony as to their undisclosed intention not to be personally bound. The testimony was inadmissible and was properly stricken out later. (*Thomas* v. *Scutt*, 127 N. Y. 133.)

The judgment should be affirmed.

LEHMAN, Ch. J., LOUGHRAN, FINCH, SEARS and LEWIS, JJ., concur with RIPPEY, J.; CONWAY, J., dissents in opinion.

Judgment accordingly.