Jasen, J.
(dissenting). The majority holds today that in a mortgage foreclosure action based upon nonpayment of interest and principal, an alleged oral waiver by the mortgagee of the right to accelerate the principal and foreclose constitutes a valid affirmative defense to foreclosure. Since sound legal principles and the record in this case make such a result unreasonable and untenable, I disagree with the majority’s holding and would affirm the order of the Appellate Division.
Plaintiff, who had loaned the defendant $300,000, agreed to enter into an extension agreement rather than foreclose on the property defendant had mortgaged to secure the loan. That extension agreement established a new payment schedule, provided that the agreement could not be changed or terminated orally, and also provided that all the rights and obligations specified by the parties under the prior agreement would be continued under the terms of the extension agreement. Particularly pertinent to this case is paragraph 8 of the mortgage which provides that the whole principal will become due and payable upon the failure of Montrose to “pay any installment of principal or interest within thirty days from the date same became due and payable.” Except for its obvious obligation to repay the loan, the defendant had no responsibilities under the contract other than to continue to pay certain real property taxes.
It is not disputed that the defendant also defaulted on its responsibilities under the extension agreement. Even then, the bank did not immediately exercise its right to foreclose, but rather continued, in good faith, to work out an arrangement whereby the defendant could make the required payments.
When it appeared that no satisfactory arrangement would be reached, Mr. Saxton, a vice-president of the bank, according to affidavits filed by the defendant, called and *189 informed Mr. Imperato, president of the defendant company, that certain payments had to be made by the end of the month or the bank would be forced to proceed with the foreclosure action. He also informed Mr. Imperato that the bank would be forwarding a letter to that effect. Obviously upset with this action, Mr. Imperato argued for additional time to complete the negotiations for the sale of defendant Montrose to its competitor, Imperia Brothers, Inc., and, according to the affidavit, Mr. Saxton agreed “to waive any default in meeting its terms until Montrose was able to close a sale to Imperia.”
Along with his affidavit, Mr. Imperato filed a copy of the letter dated January 12, 1979, which he received from the bank. That letter indicated the bank was allowing Montrose until January 31, 1979 to pay the delinquent real estate taxes and present the bank with a signed contract of sale to Imperia. That letter stated that these conditions were set forth on the basis of the telephone conversation between the parties. It further stated that: “If these conditions are met, Nassau Trust Company will consider extending for an additional period of time necessary to complete a closing on said contract.” In closing the letter, Mr. Saxton reiterated the bank’s position that if the terms of the letter were not met, Nassau Trust would begin immediate foreclosure proceedings. Despite the clear language of the letter, Mr. Imperato states that he ignored the letter and relied on the prior oral waiver. He did so without so much as double-checking his understanding of the telephone conversation, to which the letter made specific reference, with Mr. Saxton or anyone at the bank.
The affirmative defense which these papers allegedly raise is that the bank orally waived its right to foreclose for one year and that because he relied on that waiver in continuing to negotiate with Imperia, the bank is now estopped from asserting its right to foreclose. (Imperator Realty Co. v Tull, 228 NY 447.) Defendant’s brief, however, also argues that there was an oral modification of the agreement because the bank agreed to defer its right to foreclose for one year in exchange for the defendant securing a buyer for the property and paying off the loan with the proceeds of the sale. Any construction of these allega *190 tions, I believe, can only lead one to conclude that there is no basis, applying sound commercial and contract law principles, on which to hold that a valid affirmative defense has been asserted.
The clear language of the extension agreement states that “[tjhis agreement may not be changed or terminated orally.” On the face of that provision and subdivision 1 of section 15-301 of the General Obligations Law, it appears clear that the parties intended that all changes, be they terminations, waivers or modifications, would be required to be in writing. Certainly, contracting parties have the discretion to require that all further changes, of any variety, be in writing. Indeed, such provisions are designed precisely to avoid litigation, such as presented by this case, which is based on mere bare allegations of oral waivers, to which no defense except the assertion that the oral waiver was never made can be raised.
Nor was it unreasonable for the parties to this agreement to assume that the broad “no changes” language used in this agreement would bar allegations of all forms of changes under section 15-301 of the General Obligations Law. The majority states that “subdivision 1 of section 15-301 of the General Obligations Law speaks only to a change by agreement (that is, a modification) and not to a waiver,” but the language of that statute states only that “[a] written agreement * * * which contains a provision to the effect that it cannot be changed orally, cannot be changed by executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought”. (Emphasis supplied.) Thus, it seems clear to me that when the parties agree, as it is alleged by the defendant that they did in this case, that there will be a new payment date (be it one year hence or at the time of sale) that new agreement is required by section 15-301 of the General Obligations Law to be in writing. Indeed, subdivision 4 cited by the majority indicates that the bank could not have initially waived the contract provision barring oral changes which would have been necessary to enable it to orally change the provisions concerning the payment schedule.
*191 Furthermore, the specific language exempting waivers used in section 2-209 of the Uniform Commercial Code, also cited by the majority, indicates that the Legislature did not intend to so exempt waivers from the coverage of the General Obligations Law. If it had so intended, there is no reason why the specific language referring to waivers used in section 2-209 of the Uniform Commercial Code could not have been used in this statute also. But instead, the statute forbids all changes by executory agreement — that is, agreements yet to be performed. Since Mr. Imperato’s affidavit alleges only future obligations on the part of either party, this is clearly an executory agreement. (East Riv. Sav. Bank v 245 Broadway Corp., 284 NY 470, 476.)
But even if one construes section 15-301 of the General Obligations Law, as does the majority, not to cover waivers, there is no support for terming this new agreement to be a waiver. Although the defendant asserts that this is a waiver, the facts presented allege not a waiver (Clark v West, 193 NY 349, 360), but an oral modification of the contract. A modification, which he argues, is supported by an exchange of promises: the bank promising not to foreclose and the defendant promising to secure a buyer for the property. Such a modification, even the majority would agree, is clearly barred by section 15-301 of the General Obligations Law. (Chemical Bank v Wasserman, 45 AD2d 703, affd 37 NY2d 249.) To construe this as a waiver, rather than a modification of the contract, ignores the fact that substantial rights and obligations of both parties are affected by this change in the contract. The bank has deferred certain rights for at least one year and the defendant has assumed a new obligation — to find a purchaser. The fact that he already was negotiating with a purchaser did not make this any less of an obligation.
Assuming, however, that it is reasonable to construe Mr. Imperato’s allegations to assert a waiver by the bank, the affidavit and the letter submitted indicate that the bank adequately notified Mr. Imperato of its intention to withdraw any prior waivers. Even crediting Mr. Imperato’s statement to the effect that the bank waived its right to foreclose during the telephone conversation, the letter submitted by the defendant indicates that the bank was *192 withdrawing all previously made waivers, including any made in the course of that telephone conversation. Thus, it is clear that this affirmative defense cannot stand because, as stated by the majority, “[in] a foreclosure action based on nonpayment, the mortgagee’s oral waiver of the right to accelerate the principal and foreclose * * * constitutes a valid affirmative defense to foreclosure, absent withdrawal of the waiver upon reasonable notice to the mortgagor.” I fail to perceive what more notification would or should be necessary to withdraw this alleged waiver.
Viewed in any of these postures, the allegations of the defendant assert an oral executory agreement which either violates the no oral change provision in the agreement or violates section 15-301 of the General Obligations Law because it constitutes a modification of the contract. To hold, as the majority does, defeats both the intent of the parties and that of the Legislature. But even if the majority’s interpretation is to be totally adopted, the facts presented by the defendant clearly indicate that he was notified of the bank’s withdrawal of any and all previous waivers. The majority’s interpretation means that, in the future, no lending institution, however carefully and precisely it may word its mortgage documents, will be able to protect itself against claims that one of its sympathetic officers has orally waived its right to foreclose the mortgage, no matter how specious the claim may be. I believe today’s holding will have a profound effect in the sphere of commercial and contractual transactions and will, I trust, invoke immediate legislative reply.
Chief Judge Cooke and Judges Gabrielli, Wachtler and Fuchsberg concur with Judge Meyer; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Jones concurs.
Judgment appealed from and order of the Appellate Division brought up for review reversed, with costs, and the order of Supreme Court, Westchester County, dated October 31, 1979, reinstated.