■ ORBIT HOLDING CORP., Appellant, v ANTHONY HOTEL CORPORATION et al., Respondents.—Judgment, Supreme Court, New York County (Connor, J.), entered October 1, 1984, following a nonjury trial, which dismissed plaintiff's complaint, unanimously reversed, to the extent appealed from, with costs, on the law and the facts, and judgment granted to plaintiff on the second cause of action for $115,000, together with interest from February 7, 1980 and costs.

On January 4, 1979, plaintiff's predecessor, Bernal Realty Corporation, contracted to purchase the 24-story Hotel Opera from defendant, Anthony Hotel Corporation, for $1,800,000 for the purpose of converting the building from, essentially, a rooming house into luxury cooperative apartments with commercial space on the ground floor. For reasons not here relevant, Bernal assigned the contract to Anmil Realty Corporation, which received a deed from defendants and, at the closing, conveyed the property to plaintiff Orbit Holding Cor-

poration. Bernal, Anmil and plaintiff are wholly owned subsidiaries of the Next City Corporation. In the interim between the contract signing and the closing, since it was desirous of using space on the ground floor as a sales office to sell apartments in advance of completing construction, and in reliance upon alleged oral representations made by defendants as to the month-to-month status of the tenancy, Bernal brought a holdover proceeding against Plaka Steak House. Bernal discontinued the proceeding when Plaka produced a written 10-year lease not due to expire until 1987, at a monthly rental of $1,150. Plaintiff instituted a second dispossess proceeding against Plaka pursuant to the buy-out provisions of the subsisting Anthony Hotel-Plaka lease, whereunder the seller, upon sale of the entire hotel, was entitled to buy, cancel, or terminate the lease, *inter alia,* for $18,500 in the second year of the term. The proceeding was settled by payment of $115,000 to Plaka.

Plaintiff then commenced this action for fraud and breach of contract against the seller and its president, Tran Dinh Truong, based upon alleged concealment of the lease. Plaintiff sought compensatory damages of $750,000. The action was tried, without a jury, in five days between July 30 and August 3, 1984. Lewis Futterman, the president and owner of the Next City Corporation and its subsidiaries, who negotiated the sale on behalf of Bernal, testified as follows: He considered Plaka an undesirable tenant due to the presence of a bar, a history of antisocial activities, and regular police surveillance. During preliminary negotiations Truong had represented that Plaka was a month-to-month tenant and could be evicted quickly. At the contract signing on January 4, 1979, the seller produced only a photocopy of the expired 1967-1977 Plaka lease with the handwritten notation, "rent now $1,150 per month", which plaintiff's attorney, Milton Bernstein, initialed and photocopied. At the May 3, 1979 closing, the seller again produced only the expired Plaka lease. The buyer had not seen the subsisting lease until after the holdover proceeding was commenced.

Futterman's testimony concerning production of the expired lease at the contract signing and closing was corroborated by Bernstein and Harry Newman, the attorney who represented defendants during the sales transaction. Bernstein testified that at the contract signing he had initialed a photocopy of the expired Plaka lease which he photocopied and returned to defendants in accordance with paragraph 41 of the contract of sale. Newman told him that his client only had a photocopy,

and could not produce the original. Paragraph 41 contains the seller's representations to the purchaser and states, *inter alia,* that all commercial leases have been exhibited to and init- ialed by the purchaser and that the only commercial tenants in the premises were those listed in an attached schedule. Plaintiff introduced its photocopy of the initialed lease into evidence. It is undisputed that no schedule was attached to the contract. Bernstein further testified that he made repeated attempts after the execution of the contract and prior to the closing to obtain the omitted schedule of commercial leases and the dates of expiration.

As to damages, Futterman and Daniel Finkelstein, a real estate litigation attorney with 29 years of experience, testified that the second dispossess action was settled for an amount substantially in excess of the buy-out provisions of the subsist- ing lease because those clauses narrowly limited the exercise of the right to cancel to the seller of the hotel. The benefit of that provision was not available to a buyer of the building. A real estate appraiser also testified on plaintiff's behalf con- cerning the prevailing market rental value for the space occupied by Plaka. According to the appraiser the rental loss for the life of the lease was $63,200 annually. By its own admission plaintiff did not intend to rent the premises until the completion of construction and made a substantial profit on the cooperative offering. It sold all the cooperative shares for a net profit of $900,000 and a 50-year leasehold interest.

Defendant Truong testified that he gave Futterman the original of the subsisting lease for photocopying during a meeting in December 1978, and that Futterman had failed to return it. He denied giving Futterman or Bernstein a copy of the expired lease, and had no idea how that document was obtained. A hotel employee testified that he observed Truong give Futterman certain unspecified documents on the date alleged. Pat Servello, the hotel's bookkeeper, testified that he had provided a representative of the buyer with the expired Plaka lease and a schedule of commercial leases, which stated as to the Plaka Steak House, "deposit $2,000; lease yes; rent $1,100 W $1,150."

The trial court dismissed the plaintiff's amended complaint on the ground that plaintiff failed to prove defendants made a false statement with intent to deceive plaintiff. The court suggested defendants had nothing to gain from concealing the lease and could have inadvertently produced the expired lease at the closing. It viewed plaintiff's acceptance of closing ad- justments, which had been calculated on the basis of the

monthly rental of $1,150, as inconsistent with its alleged reliance upon the expired lease. The court inferred from Bernstein's purported failure to demand production of the omitted schedule of leases at the closing that plaintiff had already received the second lease. The court rejected the evidence concerning damages as too speculative and noted the "unexplained" settlement of the second dispossess action for $115,000 despite the lump-sum payment allowed under the subsisting lease. Thus, it held that plaintiff failed to prove any damages. As limited by its brief, plaintiff appeals from the dismissal of the complaint and seeks judgment on its second cause of action for fraud.

To sustain an action for fraud, plaintiff must prove, by clear and convincing evidence, that a representation of a material fact was made; that such representation was false, and known to be false by the party making it, or was recklessly made; that such representation was made to deceive and to induce the other party to act upon it; and that the party to whom the representation was made relied upon it to its injury or damage. (*Jo Ann Homes v Dworetz*, 25 NY2d 112 [1969]; *Simcuski v Saeli*, 44 NY2d 442 [1978].) Applying these elements to the present case, plaintiff proved that it was defrauded by defendants. Futterman, Bernstein and Newman each testified that defendants produced only the expired Plaka lease both at the contract signing and the closing. This could hardly have been inadvertent. Defendants' failure to produce the copy of the expired lease in their possession gives rise to the negative inference that Bernstein did in fact sign the expired lease, as recited in the contract.

We cannot agree with the trial court that defendants had no motive to deceive plaintiff. Assuming, arguendo, his unawareness of plaintiff's plan to convert the hotel into cooperative apartments, Truong was a successful businessman and certainly knew that vacant premises had a higher market value than premises subject to a lease with eight years remaining, particularly where the tenant might be regarded as undesirable and the rent was below market value. Contrary to the conclusion of the trial court, acceptance of closing costs based on the $1,150 monthly rental was consistent with plaintiff's reliance upon Truong's oral representation that Plaka had become a month-to-month tenant at that higher rental upon expiration of the only lease produced, the 1967-1977 lease. The trial court overlooked Bernstein's uncontroverted testimony that he repeatedly sought to obtain the omitted schedule of leases prior to the closing. In our view, Truong's

testimony is highly self-serving and incredible under the circumstances. Where, as here, the findings made by the trial court are based in large part upon considerations other than the credibility of witnesses, this court need not accord its findings great deference. We are equally empowered to draw inferences and make findings of fact based upon the evidence in the record. *(Jacques v Sears, Roebuck & Co.,* 30 NY2d 466 [1972].)

While Orbit's profit from the conversion did not vitiate any damages to which it was entitled, the trial court properly excluded the claim for loss of future profits based upon Orbit's inability to evict Plaka expeditiously and expert testimony concerning prevailing market rates for rental of the premises. A defrauded party is only entitled to recovery of "out-of-pocket" and consequential damages, "the sum necessary for restoration to the position occupied before the commission of the fraud [citations omitted]." *(Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc.,* 88 AD2d 461, 468 [2d Dept 1982].) In any event, the proffered expert testimony as to prevailing market rental value bore no relation to plaintiff's intended use of the premises. By plaintiff's own admission, upon evicting Plaka it intended to use the space for a sales office. The success of the offering was apparently unaffected by the use of a third-floor sales office. Forty per cent of the apartments were sold within one month of the offering.

Plaintiff is, however, entitled to recover the costs of settling the second dispossess action. Contrary to the trial court's implicit finding, the settlement was neither inappropriate nor excessive in amount. Faced with a tenant having eight years left on its lease, rather than a holdover tenant, a construction schedule, and a dubious legal position in the second dispossess proceeding, plaintiff was justified in settling the action to avoid the risk of compounding its damages with protracted litigation costs and attorney's fees. The likelihood of success in the second dispossess action was doubtful since, as plaintiff's real estate litigation expert testified, the buy-out provisions of the subsisting lease were narrowly limited to exercise by the seller prior to a sale. The expenditure was thus necessary to restore plaintiff to the position it reasonably believed it held as of the closing. Concur—Kupferman, J. P., Sullivan, Lynch, Rosenberger and Ellerin, JJ.