EAST END OWNERS CORP. et al., Respondents, v ROC-EAST END ASSOCIATES et al., Appellants, et al., Defendant.

First Department, June 11, 1987

## APPEARANCES OF COUNSEL

*Victor M. Metsch* and *Stephen H. Reese* of counsel *(Hartman & Craven,* attorneys), for respondents.

*Jeremy D. Morley* of counsel *(Halperin Shivitz,* attorneys), for Roc-East End Associates and others, appellants.

*Andrew N. Krinsky* of counsel *(Donald A. Derfner, Kevin L. Smith* and *John H. Beers* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for Olnick Boxer Blumberg Lane & Troy, appellant.

### OPINION OF THE COURT

ROSENBERGER, J.

Plaintiffs-respondents are the cooperative corporation and tenant-shareholders in the cooperative apartment building at 45 East End Avenue in Manhattan. They have instituted this action against the sponsor of the cooperative conversion plan, Roc-East End Associates; the sponsor's general partners, Robert Olnick Associates and Great Universal Development Company, Inc.; the selling agent under the plan, Robert Olnick Corp.; the law firm of Olnick, Boxer, Blumberg, Lane & Troy (Olnick Boxer), attorneys for the sponsor and selling agent; Robert Olnick individually; and Brewack Realty Corp. (Brewack), lessee of the garage in the building pursuant to a lease given by the sponsor on or about March 1, 1980.

Respondents allege that the garage lease was a "sweetheart" agreement which, at the time it was signed, had no valid business purpose other than to circumvent the strictures of the Federal Condominium and Cooperative Conversion Protection and Abuse Relief Act of 1980 (15 USC § 3601 *et seq.*) which gives tenant-shareholders the right to cancel such agreements made by a co-op's sponsors after October 8, 1980. When Brewack and the sponsors entered into the subject lease in March 1980, there was an existing lease which, by its terms, was to remain in effect for several years. The Brewack lease, which had an initial term of 15 years and three renewal terms of 15 years each, was not to become effective until four years and five months after its execution.

Respondents concede that the financial provisions of the Brewack lease were fully disclosed in the offering plan. However, they maintain that defendants-appellants violated the Martin Act (General Business Law, art 23-A, § 352-e) and committed common-law fraud by failing to disclose the sponsor's reasons for entering into this lease before the tenant-shareholders could act, and by not disclosing the attorney-client relationship which existed between Olnick Boxer and

Brewack, and the ongoing business relationship between the sponsor's principals and the lessee.

The purpose of the Martin Act, generally, and of section 352-e (1) (b), particularly, is to provide prospective investors with sufficient factual information for them to make an intelligent decision about purchasing an interest in real estate offered pursuant to a cooperative conversion plan *(Phoenix Tenants Assn. v 6465 Realty Co.,* 119 AD2d 427, 429 [1st Dept 1986]). It is designed to prevent fraud in connection with such offerings. *(See, Apfelberg v East 56th Plaza,* 78 AD2d 606, 607 [1st Dept 1980], *appeal dismissed* 54 NY2d 680 [1981].) To this end, the Attorney-General is authorized under subdivision (6) of section 352-e to adopt regulations governing the contents of the offering statement. It is undisputed that the offering plan herein did not comply with the Attorney-General's regulation (13 NYCRR 17.2 [b] [2] [xxii]) which requires that the offering plan include: "A summary of all contracts, appointments, agreements and binding obligations made by promoters (their nominees or dummies) that will be binding upon the cooperative organization after it is actually tenanted, setting forth the full details thereof, including the length of time of the obligations or arrangements *and the reasons why* binding agreements were made for the purpose involved (include garage concessions, laundry concessions, managing agent contracts, etc.), before the actual tenant stockholders could act upon these matters." (Emphasis added.) A fair reading of respondents' allegations leads to the conclusion that, had appellants complied with the above-cited regulation, respondents would have been alerted to the fact that the garage lease was not an arm's length, market rate transaction.

■ While we agree that the complaint does state a valid claim for violation of section 352-e, we are, nevertheless, constrained to dismiss it as to the tenant-shareholders because they have no standing to maintain an action under this section of the Martin Act. In *CPC Intl. v McKesson Corp.* (120 AD2d 221 [1986]), this court held that there is no private right of action under section 352-c of the Martin Act. This conclusion followed from analysis of *Burns Jackson Miller Summit & Spitzer v Lindner* (59 NY2d 314 [1983]) and cases concerning a private right of action under the Federal Securities Act of 1933 § 17 (a) (15 USC § 77 q [a]). *(See, CPC Intl. v McKesson Corp., supra,* at 230-231, 234-236.) These cases establish that a private right of action can exist only where "the Legislature

clearly intended to provide this kind of remedy." We find no such intent with regard to section 352-e of the Martin Act.

■ As to respondent cooperative corporation, however, we do find legislative authorization for it to maintain an action for this particular violation of the Martin Act. A provision of the Condominium Act enacted after section 352-e of the Martin Act authorizes a condominium's board of managers to bring suit on behalf of two or more unit owners "with respect to any cause of action relating to the common elements or more than one unit" (Real Property Law § 339-dd). Thus, a condominium's board of managers which, in all relevant respects, serves the same function as a cooperative's board of directors, could maintain this action for violation of section 352-e. We agree that, inasmuch as section 352-e applies to both cooperative and condominium conversions, there is no reason to deny owners of cooperative units the protection afforded owners of condominium units in this regard *(Scarsdale Manor Owners v Wolloch,* 106 AD2d 439 [2d Dept 1984], *appeal dismissed* 65 NY2d 811 [1985]).

■ Turning to respondents' claim for common-law fraud, we find that the complaint fails to state a cause of action. The gravamen of a complaint for common-law fraud is the knowing misrepresentation or omission of a material fact which induces reliance to the plaintiff's detriment *(Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403, 406-407 [1958]; *Orbit Holding Corp. v Anthony Hotel Corp.,* 121 AD2d 311, 314 [1st Dept 1986]). As with all tort claims, there must be some causal connection between the injury sustained and the alleged wrong *(Steitz v Gifford,* 280 NY 15, 20 [1939]).

Respondents' alleged injury from the "sweetheart" garage lease arises from the loss of rental income to the cooperative with a concomitant increase in maintenance charges to the shareholders. Their injury, if any, does not arise from the fact that principals of the sponsor-lessor had an ongoing relationship with the lessee, but from the discount, below market, rate which may have been given the lessee for the term of this renewable lease. Such loss, however, is readily discernible from analysis of the financial terms of the lease which were fully disclosed in the offering plan. Where a party has means available to him for discovering, "by the exercise of ordinary intelligence", the true nature of a transaction he is about to enter into, "he must make use of those means, or he will not

be heard to complain that he was induced to enter into the transaction by misrepresentations" *(Schumaker v Mather,* 133 NY 590, 596 [1892]). Respondents had, in the offering statement, the means for discovering whether the rental to be paid under this lease was reasonably related to current market rates or not.

█ We have reviewed the complaint, as amended, and can find no basis for respondents' action against Brewack, which is not a party to this appeal, for a judgment declaring the subject lease invalid and unenforceable. That cause of action should also be dismissed as to all parties.

Accordingly, the order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on or about July 30, 1986, which granted defendants-appellants' motion for leave to renew or reargue their prior motion to dismiss the complaint, as amended, and, upon renewal/reargument, adhered to the court's prior decision and order dated March 5, 1986, denying the motion; and which granted plaintiffs-respondents' cross motion to dismiss appellants' counterclaims, should be modified, on the law, to dismiss the complaint in its entirety as to the individual plaintiffs-respondents, and to dismiss the second and third causes of action therein as to the corporate plaintiff-respondent, with costs, and otherwise affirmed. The appeal from the order dated March 5, 1986, should be dismissed as superseded by the appeal from the order entered on or about July 30, 1986, without costs.

SULLIVAN, J. P., CARRO, ASCH and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 30, 1986, unanimously modified, on the law, to dismiss the complaint in its entirety as to the individual plaintiffs-respondents and to dismiss the second and third causes of action therein as to the corporate plaintiff-respondent, and otherwise affirmed. Defendants-appellants shall recover of plaintiffs-respondents $75 costs and disbursements of these appeals.

Appeal from order of said court entered on or about March 5, 1986, unanimously dismissed, without costs and without disbursements, as superseded by the appeal from the order entered on or about July 30, 1986.

[The following page is 375.]