[614 NYS2d 985]

Linda A. Sisler, Individually and as Parent of Grant Sisler, an Infant, et al., Plaintiffs, v Security Pacific Business Credit, Inc., Defendant and Third-Party Plaintiff-Respondent. Harold Leviton, Individually and as Trustee for the Benefit of Linda A. Sisler, and Another, Third-Party Defendant-Appellant and Fourth-Party Plaintiff, et al., Third-Party Defendants, et al., Fourth-Party Defendant.

First Department, August 4, 1994

 
 

**APPEARANCES OF COUNSEL**

*Arthur Richenthal* of counsel, New York City *(Richenthal, Abrams & Moss,* attorneys), for third-party defendant-appellant.

*David S. Klafter* of counsel *(Ian D. Watsan* with him on the brief; *White & Case,* attorneys), for third-party plaintiff-respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

Harold Leviton, appellant herein, and David L. Robbins (Robbins), trustees of two essentially identical Robbins family trusts, known as the Sisler Trust and the Druckman Trust, respectively, established in January 1981, are the defendants in a third-party action brought by Security Pacific Business Credit, Inc. In the main action, the beneficiaries of the two trusts claim that the cotrustees were not legally authorized to assign to Security for the benefit of Robbins, an income beneficiary of the trusts, a portion of up to approximately $2.5 million plus interest of the trusts' share in certain condemnation proceeds awarded as a result of the condemnation in 1988 by the Metropolitan Transportation Authority of real property located at 30th Street and 10th Avenue in Manhattan in which the two trusts had an approximate 25% aggregate ownership interest.

The plaintiff beneficiaries, the children and grandchildren of Robbins, claim that the assignment was invalid because condemnation proceeds constitute principal which could not be distributed for the benefit of Robbins, one of the income beneficiaries, and was not authorized by the trust instruments. They seek the return by Security to the trusts of Robbins' share of the condemnation proceeds already received ($1,363,280) and the voiding of the assignment with respect to the trusts' share of future condemnation proceeds.

In its third-party complaint Security alleges that it advanced $5,068,000 to Robbins in reliance upon the execution of an assignment securing Robbins' obligations by appellant. The

assignment was part of a complex arrangement in which Security loaned Robbins and the three Cohen third-party defendants $5,068,000, secured by the assignment of a portion of the trusts' share of the condemnation proceeds, to enable Robbins and the Cohens to repay Security, their factor, for previous advances secured by an "irregular" account receivable of Metal Purchasing Company, Inc. (MPC), which Robbins and the Cohens owned. Appellant was not involved in MPC and had no financial interest in the transaction. Unlike Robbins and the Cohens, he was not personally indebted to Security under the promissory note for the loan for which the assignment was security. Of the seven documents executed in connection with the loan closing, at which he was not present, only the assignment required his signature. It is conceded that Security was given copies of the two trust agreements before the closing and reviewed the same.

The trusts are funded by a limited partnership interest in Eastern Starr Associates, the owner of the condemned real property at 30th Street and 10th Avenue in Manhattan, which leased the premises to MPC. According to appellant, a "long time close" friend of Robbins and his family, he agreed to serve as cotrustee as an accommodation to Robbins, who advised him that a "disinterested trustee" (not a member of the Robbins family) was needed for tax purposes. Appellant states that, pursuant to the agreement reached at the time of their creation, he took no part in the administration of the trusts, which, given that their corpus consisted of a minority interest in a real estate partnership, were basically passive; received no financial statements; did not sign or see any income tax returns and received no remuneration. According to appellant, he had nothing to do with the trusts until the 1988 condemnation of the West 30th Street property.

Appellant also states that he executed the assignment at the request of Robbins, having been told that Robbins had discussed the financial problems involving MPC and Security with his daughters, each of whom is the settlor of one of the trusts, and that they had, for themselves and their children, agreed that the trusts should enter into the assignment to help their father. According to appellant, Robbins informed him that he, Robbins, had been advised by an attorney whom he had consulted that the trusts could legally assign their interest in the condemnation proceeds for Robbins' benefit.

The assignment sets forth in capital letters the names of the parties who are the assignors. The two trusts, among others,

namely, Robbins and the three Cohens, are identified as assignors acting through their named trustees, Robbins and appellant, as a class. In providing for the distribution of the condemnation award proceeds, the assignment speaks of the trusts and not the trustees individually. The assignment also contained the express representation and warranty that "[e]ach [a]ssignor * * * is duly authorized to enter into and to make this [a]ssignment * * * [and] has, prior to the date hereof, duly taken all acts necessary to make this [a]ssignment valid and binding on such [a]ssignor in all respects." Appellant signed the assignment solely in his capacity as a trustee. In the acknowledgment made in his capacity as a trustee appellant stated that "he signed his name [to the assignment] by the authority granted him under [the] [t]rust [a]greements."

Security has asserted four causes of action against appellant —enforcement of its contractual rights under the assignment, estoppel, breach of representations and warranties and misrepresentation*—all based essentially upon the previously noted representation and warranty. After joinder of issue, appellant moved for summary judgment dismissing the third-party complaint as to him upon the grounds that the assignment, on its face, indicates that appellant, a trustee, assumed no personal liability and that Security could not justifiably rely on his representations as to the trusts' authority to assign since Security had reviewed the trust agreements prior to the completion of the loan transaction and execution of the assignment. Security cross-moved for summary judgment on the third-party complaint, citing its reliance on appellant's representation and warranty that the trusts were authorized to assign the condemnation award proceeds.

Except as noted, the IAS Court denied the motion and cross motion. Only appellant appeals. In an earlier appeal from the denial of plaintiffs' motion for summary judgment on the main complaint, this Court reversed and granted summary judgment in plaintiffs' favor (Sisler v Security Pac. Bus. Credit, — AD2d —, 1994 NY Slip Op 3035 [Apr. 5, 1994]), concluding that the assignment was invalid since the condemnation award proceeds, as a matter of law, constituted principal, the assignment of which the trusts did not authorize, and that, in

* The IAS Court dismissed Security's negligent misrepresentation claim, leaving intact its claim for reckless or intentional misrepresentation. Security has not appealed from this determination.

any event, even if the proceeds constituted income, any assignment thereof was barred by EPTL 7-1.5 (a) (1).

We reverse the denial of appellant's motion. It is the settled law of this State that, in the absence of evidence to the contrary and subject to certain exceptions, "where the contracts made by trustees are executory, upon a new and independent consideration and the liability claimed is not based upon any obligation of the creator of the trust, in spite of the fact that they are not made for the benefit of the trustees but rather for the benefit of the trust estate, as to third parties a personal obligation on the part of the trustees is created and the third party may not look to the trust estate to satisfy his obligations." *(East Riv. Sav. Bank v 245 Broadway Corp.,* 284 NY 470, 476-477, citing *Austin v Munro,* 47 NY 360, 366; *O'Brien v Jackson,* 167 NY 31.) As the Court of Appeals recognized, however, in *East Riv.,* a trustee may, by the terms of a contract as written, limit his obligation so as to exclude personal liability for its breach. (284 NY, *supra,* at 478.) Since, in executing the assignment, appellant clearly indicated that he was acting in his representative capacity as a trustee, he is, as a matter of law, not personally liable for the trusts' inability to honor the assignment.

In *East Riv.,* in relieving the trustees of any personal liability, the Court expressly noted that in none of the instruments at issue, a bond and mortgage and consolidation agreement, "was there a specific provision exempting the trustees from personal liability" *(supra,* at 478); rather, it premised its holding on "the recital in the instruments of the character in which the trustees were acting, as a class and not individually or jointly and severally, their signing and executing as trustees under the trust instrument, the fact that the instruments refer to the trust instrument and the place of its public record, [which] gave notice to the plaintiff of all of the provisions of the trust agreement, the character under which they acted and under which they had authority to act and established the limitation of their liability as individuals." *(Supra,* at 478.) In such circumstances, the Court held, "[T]he instruments on their face do not create a personal liability." *(Supra,* at 478.) Similarly, in the instant case, the assignment contains a recital of the trust entities as parties to the assignment, identifies each as an "[a]ssignor", "acting through" Robbins and appellant, "the [t]rustees of both the [t]rusts", and the signing is in the name of each trust by the trustees, including appellant, as "Trustee".

Security argues, erroneously, as it did before the IAS Court, that in the absence of an express disclaimer of personal liability appellant is personally liable under the assignment and attempts to distinguish *East Riv. (supra)* by pointing to language at the outset of the opinion referring to a provision in the trust instrument exempting the trustees from liability except for misconduct or gross negligence. Such a provision obviously speaks *inter se,* defining rights between the trustees and the beneficiaries, not between the trustees and third parties. This conclusion is reinforced by the facts that the Court did not rely on the clause and, as previously noted, specifically pointed out the absence of a disclaimer of liability clause in the instruments in question.

Moreover, in *Chase Natl. Bank v Engel* (262 App Div 55), this Court made it clear that such an express disclaimer is not essential to a finding that a trustee is not personally liable. In a fact situation "substantially similar" *(supra,* at 56) to *East Riv.,* but involving a trust agreement that, unlike *East Riv.,* did not contain any disclaimer language, we held that the trustees were not personally liable, given the recital in the agreement in question that "certain of the parties thereto are trustees acting as a class and not individually or jointly and severally and that they have signed and executed the agreement as such trustees and [since] ample notice of the provisions of the trust instrument and of the capacity in which the trustees are acting and of their authority to so act has been given." *(Supra,* at 55-56.)

Nor is there any merit to Security's argument, accepted by the IAS Court, that appellant's express representation and warranty of authority and validity with respect to the assignment distinguishes this case from *East Riv.* This is a distinction without a difference since the representations and warranties were made by each assignor, of which there were six. Each of the trusts, not the individual trustees, was defined as an assignor. Security drafted the assignment, expressly denominating each of the trusts, Robbins and the three Cohens as an "Assignor" making the representations and warranties. If Security wanted appellant's personal representations and warranty it could have so provided.

Of course, Security's claim for misrepresentation, intentional or reckless, stands on a different footing. That appellant, in making false and fraudulent misrepresentations as to the trusts' authority to make the assignment, was acting for

the trusts does not insulate him from personal liability for tortious conduct. *(Laska v Harris,* 215 NY 554, 556; *Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc.,* 88 AD2d 461, 467, n 5.) If appellant made the representation and warranty of authority with a fraudulent design, as alleged, and damage resulted, he is liable, notwithstanding his lack of personal interest in the transaction and even though the misrepresentations were made on behalf of the trust. *(Laska v Harris,* 215 NY, *supra,* at 556-557.)

In any event, to the extent Security relies on the express representation and warranty of authority and validity, its contract, estoppel, breach of warranty and intentional or reckless misrepresentation claims fail because it cannot establish justifiable reliance. *(See, Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68, 81-82 [estoppel]; *Ponzini v Gatz,* 155 AD2d 590, *lv dismissed* 75 NY2d 946 [breach of warranty]; *Vermeer Owners v Guterman,* 78 NY2d 1114 [fraud].) As the Court noted in *DiFilippo v Hidden Ponds Assocs.* (146 AD2d 737, 738), "If the facts represented are not peculiarly within the representor's knowledge and the other party has the means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation he must make use of those means or he will not be heard to complain that he was induced to enter the transaction by misrepresentation [citations omitted]."

As this record discloses, Security received and reviewed the two trust instruments before the execution of the assignment and therefore was on notice of the legal effect of their terms. Thus, if appellant and Robbins, as trustees, exceeded their powers by executing the assignment, Security knew or should have known of that fact and cannot seek indemnification from appellant personally based upon a misrepresentation of the trusts' authority. "When a transferee knows or should know the terms of the trust, he is chargeable with notice of the legal effect of those terms. Thus, if under the terms of the trust the trustee is not empowered to sell trust property, the transferee is chargeable with notice of the lack of power of the trustee, even though the transferee was not unreasonable in interpreting the trust instrument as conferring a power of sale upon the trustee, and even though the transferee so interpreted the instrument as the result of advice of competent counsel." (Restatement [Second] of Trusts § 297, comment *j; see also, Kirsch v Tozier,* 143 NY 390.)

In that regard, it must be emphasized that appellant was not making a representation as to a past fact, which, in some circumstances, may "relieve the promisee of any duty to ascertain [such] fact for himself" *(Metropolitan Coal Co. v Howard,* 155 F2d 780, 784), but rather as to the legal effect of a trust instrument. Whether the two trusts in question were authorized to assign the condemnation award proceeds to an income beneficiary presents a question of law which Security and its counsel could have independently determined from the face of the agreements, or, as to which it could have sought a judicial determination and court authorization for the assignment of the condemnation award proceeds to it for the benefit of Robbins. In view of its ability to make such a determination, Security, a sophisticated lending institution, could not rely on the representation of appellant, a layman, and cannot claim that, with the two trust agreements in hand, it did not have a full and fair opportunity to investigate and discover any infirmities in the proposed assignment of condemnation award proceeds.

*Ponzini v Gatz* (155 AD2d 590, *supra)* illustrates the point. The plaintiff was the holder of an option to purchase certain real property under a contract which stated, " 'The owners warrant they are the owners of the optioned real property and that they are entitled to execute this option affecting their ownership interest.' " *(Supra,* at 590.) One of the owners, the defendant, however, had previously conveyed an interest in the property to her children. The plaintiff sought recovery on the basis of the defendant's misrepresentation of authority, notwithstanding that the plaintiff's attorney, in conversations with the defendant, had ascertained that the defendant's children had an interest in the property and that the deed conveying the same had been recorded prior to the execution of the option. In rejecting the claim, the Second Department held that in such circumstances "the plaintiff's alleged reliance upon the [defendant's] representations was unreasonable as a matter of law." *(Supra,* at 591.)

Similarly, in *Lanzi v Brooks* (54 AD2d 1057, *affd* 43 NY2d 778), the plaintiff, a former employee, claimed that the defendant had misrepresented the effect of a proposed profit-sharing arrangement between the parties which purportedly would have given the plaintiff an equal share of the profits throughout the corporate life of the employer. At the time, all of the corporation's stock was owned by a trust created by the defendant's father-in-law. The Third Department rejected the

claim, finding that because the plaintiff "knew or should have known that the defendant did not have the ability to make such a continuing guarantee" *(supra,* at 1059), he "could not justifiably rely on the alleged representation made with respect to future profit sharing." *(Supra,* at 1058; *see also, East End Owners Corp. v Roc-East End Assocs.,* 128 AD2d 366.)

Since, as a matter of law, the third-party complaint as against appellant is without merit, it should be dismissed.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered October 6, 1993, which, insofar as appealed from, denied third-party defendant Leviton's motion for summary judgment dismissing the third-party complaint as to him, should be reversed, on the law, with costs and disbursements, and the motion granted. The clerk is directed to enter a judgment in favor of the third-party defendant-appellant dismissing and severing the action as against him.

Motion for leave to enlarge the record is denied.

ASCH, NARDELLI and TOM, JJ., concur.

Order, Supreme Court, New York County, entered October 6, 1993, which, insofar as appealed from, denied the third-party defendant's motion for summary judgment dismissing the complaint as to him, reversed, on the law, with costs and disbursements, and the motion granted. Motion for leave to enlarge the record is denied.