**SOCIETE GENERALE, Plaintiff,**

v.

**U.S. BANK NATIONAL ASSOCIATION, Defendant.**

**No. 03 Civ. 2705(JSR).**

United States District Court, S.D. New York.

July 20, 2004.

Joseph J. Sullivan, III, Sheindlin & Sullivan, LLP, New York, NY, for Plaintiff.

Joseph B. Shumofsky, Dorsey & Whitney, L.L.P., New York, NY, Todd C. Pearson, Dorsey & Whitney LLP., Minneapolis, MN, for Defendant.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff Societe Generale, a French bank with an office in New York, brings this action against U.S. Bank National Association ("U.S. Bank") for (1) allegedly breaching a contract involving the sale of various investment securities and (2) unjust enrichment. Pending before the Court are cross-motions by which each party seeks summary judgment in its favor on both claims.

The pertinent facts, either undisputed or, where disputed, taken most favorably to the applicable respondent, are as follows. In 1986 and, again, in 1993, the Industrial Development Authority of the County of Pinal, Arizona issued revenue bonds pursuant to bond indentures that it had entered into with the Arizona Bank, a predecessor of U.S. Bank. *See* Deposition of Bradford A. Stevenson, September 30, 2003 ("Stevenson Dep."), Ex. 1 (Original Indenture Agreement); Ex. 2 (Supplemental Indenture Agreement). Pursuant to the indenture agreements, most of the bond proceeds were loaned directly to the Casa Grande Community Hospital (the "Hospital"), *see* Original Indenture Agreement at 1; Supplemental Indenture Agreement at 1, but a portion of the bond proceeds were placed into a "Reserve Fund," to be used to repay bondholders in the event that, *inter alia,* the Hospital defaulted on its repayment obligations. *See* Original Indenture Agreement at 36–38.

The indenture agreements required the trustee to invest the Reserve Fund monies pursuant to instructions from the Hospital, *see* Original Indenture Agreement at 39, and, accordingly, Bank of America Arizona, which had succeeded the Arizona Bank as trustee, invested in certain United States Government Treasury securities (the "investment securities"). *See* Affidavit of Dudley Roski sworn to October 20, 2003 ("Roski Aff."), Ex. D (Reserve Fund Agreement). Subsequently, in June of 1993, Bank of America Arizona entered into an agreement with Societe Generale (the "Reserve Fund Agreement"), whereby Societe Generale, in exchange for certain semiannual fees, promised to purchase the investment securities at a specified price (the "Purchase Price") at a specified time in the future. *See id.;* Roski Aff. at ¶ 12. In essence, the Reserve Fund Agreement functioned as a kind of "put": if the securities' market value declined, Societe Generale would still be obligated to purchase the securities at the higher Purchase Price; but if the market price of the secu-

rities rose, Societe Generale would be able to purchase the securities at the lower Purchase Price and realize a profit. *See id.;* Reserve Fund Agreement § 2.1.

From June 1993 until May 2001, Bank of America Arizona and its successor banks,[1] including, ultimately, defendant U.S. Bank, paid the semiannual fees due under the Reserve Fund Agreement to Societe Generale. *See* Affidavit of Laurie Edelman sworn to on October 20, 2003 ("Edelman Aff."), ¶¶ 4–5. However, on or about November 15, 2001, Societe Generale learned that U.S. Bank had, on July 23, 2001, in violation of the Reserve Fund Agreement, sold the investment securities to a third-party, *see id.* at ¶ 10, for a total of $1,237,076.43, which was $175,657.88 more than the Purchase Price that Societe Generale would have paid under the Reserve Fund Agreement. *See id.* at ¶ 11.[2] Accordingly, Societe Generale brought this action against U.S. Bank, alleging breach of contract and unjust enrichment, and seeking recompense of the $175,657.88.

As to the breach of contract claim, the parties agree that U.S. Bank (including its predecessors) breached the Reserve Fund Agreement; but they disagree as to the capacity in which U.S. Bank was acting when it so acted. Specifically, Societe Generale seeks relief from U.S. Bank in its individual capacity and has filed suit accordingly, while U.S. Bank contends that it entered into the Reserve Fund Agreement solely in its capacity as a trustee. Not coincidentally, the latter approach would effectively deprive plaintiff of any remedy for the breach, as the bonds have been defeased, and no funds remain in the trust account. *See* transcript, 11/12/03 at 10–11.

 To resolve this issue, the Court looks solely to the language of the Reserve Fund Agreement, as parole evidence of the parties' intent cannot exempt U.S. Bank from personal liability if the contractual language has "not limited [U.S. Bank's] liabilities in a manner which would make them enforceable only out of the trust estate." *East River Savings Bank v. Samuels,* 284 N.Y. 470, 478, 31 N.E.2d 906 (1940).[3] In other words, New York law presumes that in a contract between a trustee and a third party, personal liability on behalf of the trustee attaches unless the contracting parties have clearly agreed otherwise. *See, e.g., O'Brien v. Jackson,* 167 N.Y. 31, 33–34, 60 N.E. 238 (1901); *East River Savings Bank v. Samuels,* 284 N.Y. at 477, 31 N.E.2d 906; *Heisler v. Nole,* 84 N.Y.S.2d 70, 71 (N.Y.Sup.Ct. 1948). This arises from the long-standing rule that a trustee cannot, through contract, directly bind the trust estate or its beneficiary. *See, e.g., Taylor v. Mayo,* 110 U.S. 330, 335, 4 S.Ct. 147, 28 L.Ed. 163 (1884) ("The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such."). *See also Smith v. Peyrot,* 201 N.Y. 210, 214, 94 N.E. 662 (1911). Accordingly, while a trustee may, under certain circumstances, be indemnified for contracts made in his capacity as trustee,[4]

---

1. The Reserve Fund Agreement states that "[t]his Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors." *See* Reserve Fund Agreement § 4.6.

2. These proceeds were directly applied to the Hospital's debt in connection with the 1993 Bond issue. *See* Deposition of Sheryl McMa-

hon, September 29, 2003, Ex. 18 (Casa Grande Letter).

3. Both sides agree that New York law governs the interpretation of this contract.

4. Indeed, the Original Indenture Agreement requires indemnification, *inter alia,* "with respect to any action taken or omitted ... in

see, e.g., *In re Estate of Ziegler*, 170 Misc. 748, 11 N.Y.S.2d 212, 215 (1939), liability will ordinary lie against him in his individual capacity.

■ As noted, the presumption can be overcome by contractual language making clear that personal liability was not intended. However, although an express disclaimer of personal liability is not necessarily required, some clearly limiting language must be present: for example, a proviso that a contract is entered "not in [the trustee's] individual capacity, but solely as owner trustee." *See Jet Star Enters., Ltd. v. CS Aviation Servs.*, 2004 WL 350733, at *7 (S.D.N.Y. Feb. 25, 2004), 2004 U.S. Dist. LEXIS 2760, *21. *See also, e.g., East River Savings Bank v. Samuels*, 284 N.Y. 470, 478, 31 N.E.2d 906 (1940) (no individual liability where the contract made reference to the underlying trust instrument and stated that the "trustees were acting [ ] as a class and not individually or jointly and severally"); *Sisler v. Security Pacific Business Credit, Inc.*, 201 A.D.2d 216, 614 N.Y.S.2d 985, 987–88 (1994) (no individual liability where contract refers to the trust entities, rather than the individual trustees, as parties to the agreement, and states that the trusts are "acting through" their trustees).

■ Here, the language of the Reserve Fund Agreement, while making repeated reference to the "Trustee," includes no such limiting language and is therefore insufficient to overcome the presumption of individual liability. Under New York law, the mere "fact that [a] party describes himself as trustee ... does not relieve him from personal liability, or change the effect of his engagement." *Pumpelly v. Phelps*, 40 N.Y. 59, 67 (1869). *See also* 106 N.Y.

good faith and without negligence ..." Original Indenture Agreement at 53–4.

5. Because of this determination, plaintiff's alternative claim under a theory of unjust

Jur 2d, Trusts, § 343 ("[T]he mere circumstance that in the body of the contract, reference is made to the fact that one of the parties is a trustee ... does not negative the implication of personal liability which arises from the making of the contract.").

Accordingly, summary judgment for breach of contract in the amount of $175,657.88 must be granted to Societe Generale.[5] Under New York law, moreover, Society Generale is also entitled to 9% simple interest on this figure from the date of breach (*i.e.* July 23, 2001) to the date of judgment, (*i.e.* July 20, 2004), after the entry of which federal interest rates apply. Accordingly, the Clerk of the Court is directed to enter judgment in favor of Societe Generale in the total amount of $222,998.88.

SO ORDERED.

enrichment is dismissed as moot, and defendant's motion for summary judgment is denied in its entirety.